Jane Bland, Justice
In this appeal from a decree of divorce, we determine whether the trial court had jurisdiction to divorce a husband and wife who are Mexican citizens, and the procedural effect pending Mexican litigation has on this suit. We further determine whether (1) legally sufficient evidence supports the division of community assets following the husband's failure to appear for trial; (2) the trial court erred in rendering judgments against parties who were nonsuited before trial on an alter-ego theory of liability; and (3) the trial court abused its discretion in declining to award sanctions against the wife's counsel.
Miguel Zaragoza Fuentes appeals from a divorce decree obtained by Evangelina Guzman Zaragoza. Miguel contested personal *149 jurisdiction. After the trial court denied Miguel's special appearance, he did not appear for trial. In its default decree of divorce, the trial court awarded Evangelina: (1) half of the community estate, including "[a]ll shares and all interest" in 89 business entities, on the basis that these entities and others were Miguel's alter egos; (2) $537 million in damages for fraud against the community estate; (3) injunctive relief; (4) spousal support; and (5) attorney's fees. On appeal, Miguel challenges the trial court's subject matter and personal jurisdiction and the relief awarded.
Before the trial court signed its final judgment, Dade Aviation, Inc.; Abbingdon Marine, Inc.; Ezar Management, LLC; Ezar Properties, L.P.; Eagle Ridge Properties, LLC; Elsa Esther Anchondo Carrillo; Ernesto Carrillo; and Texas LPG Storage Company intervened in the case. These third parties contend that the trial court erred in including their property interests as part of the community estate and in awarding these interests in the division of the estate, without notice to them. Myrna Alicia Zaragoza Lopez, daughter of Miguel and Evangelina, also appeals, contending that her property interests were improperly included in the community estate as well and further that the trial court erred in denying her request for sanctions against Evangelina's counsel.[1]
We conclude that the trial court had jurisdiction to hear the petition for divorce between Miguel and Evangelina. We further conclude that the trial court's disposition of the community assets, as well as the other amounts and relief awarded, are not supported by legally sufficient evidence. The trial court erred in awarding interests in the assets of third parties based on an alter-ego theory without notice to these parties. It acted within its discretion in declining to impose sanctions. Accordingly, we reverse the trial court's decree of divorce and disposition of assets, and we remand the case for further proceedings. On remand, the trial court must consider whether to defer to pending litigation in the Mexican courts for reasons of comity. We affirm the denial of Myrna Alicia Zaragoza Lopez's motion for sanctions.
Background
Miguel and Evangelina are Mexican citizens. They were married in the United States on October 14, 1953, in a civil ceremony in the state of New Mexico. They held a ceremonial wedding in Mexico three days later. The couple lived together as husband and wife until 2009. During that time, Miguel headed business enterprises in Texas and around the world.
Although Miguel claims Ciudad Juarez in Chihuahua, Mexico as his place of residence, and has a home there, he also has maintained residences and close ties with Texas, particularly in the City of El Paso, located approximately four miles from Juarez. During the course of their marriage, Miguel regularly lived with Evangelina at their residence in El Paso. All eleven of the couple's children were born in El Paso, Texas. The couple also lived at their residence in Juarez.
After the couple stopped living together, Miguel regularly lived at another residence in El Paso with Elsa Esther Carrillo *150 Anchondo (Esther), one of the intervenors in this case. In 2004, Esther gave birth to a daughter in El Paso. Miguel acknowledges Esther's daughter as his child.
Evangelina files for divorce in Harris County.
Shortly after Christmas in 2013, Evangelina moved from El Paso to Houston and began to live at a home owned by one of Miguel and Evangelina's daughters. In May 2014, Evangelina petitioned for divorce against Miguel in Harris County, Texas.
Initially, Evangelina named several individuals and business entities as co-respondents, including Esther; Robert Dale Baucom; Ernesto Carrillo; Raoul Gisler; Abbingdon Marine, Inc.; Cadogan Properties, Inc.; Dade Aviation, Inc.; Ezar Management, L.L.C.; Ezar Properties, L.P.; Texas LPG Storage Company; and Texas Overseas Gas Corp. Evangelina alleged that these co-respondents were Miguel's corporate alter egos or persons to whom Miguel improperly had diverted community funds.
Miguel avoided service by regularly crossing back and forth over the border between Juarez and El Paso. The trial court granted Evangelina's request for substituted service, and ordered that Miguel could be served by leaving a copy of the citation and pleadings at his known residence in El Paso, and another at Miguel's office of over twenty years in El Paso. Service was effected accordingly.
Miguel challenges personal jurisdiction.
Miguel filed a special appearance and supporting declaration, in which he averred that he is not a United States citizen of a Texas resident, and that he lacks sufficient minimum contacts with Texas to establish personal jurisdiction over him in this suit. Miguel also denied that he was the alter ego of any entities doing business in Texas. At the special appearance hearing, Evangelina offered testimony from Alejandra Zaragoza Sterling, the youngest of the eleven children born to Miguel and Evangelina, about Miguel's Texas contacts.
Miguel did not offer testimony or evidence in support of his special appearance. The trial court took judicial notice of a case file offered by Evangelina with documents and photographs showing a home that Miguel was building in El Paso, described as a "mansion." The architect that Miguel employed to build the home accepted service on Miguel's behalf in this suit.
The trial court denied Miguel's special appearance. Miguel did not file an interlocutory appeal, and our court later denied Miguel's petition for writ of mandamus challenging the denial of his special appearance. See In re Fuentes , No. 01-14-00624-CV, 2014 WL 4251152, at *1 (Tex. App.-Houston [1st Dist.] Aug. 28, 2014, orig. proceeding [mand. denied] ) (mem. op.) (per curiam).
Miguel did not participate in further trial court proceedings. Evangelina ultimately moved for a default judgment against Miguel, which the trial court granted.
The third parties contest subject-matter jurisdiction.
In February 2015, Ernesto Carrillo and Texas LPG Storage Company filed a plea to the trial court's jurisdiction, contending that it lacked subject-matter jurisdiction to entertain the suit for divorce. As part of their plea, the third parties alleged that Miguel and Evangelina had already divorced in a legal proceeding in Mexico in 1959.
Ernesto Carrillo and Texas LPG requested that the trial court take judicial notice of (1) a divorce decree from the Mexican Civil Registry stating that the couple divorced in May 1959, (2) a Mexican *151 divorce certificate, (3) Miguel's Mexican birth certificate (containing a notation regarding the divorce), and (4) Evangelina's Mexican birth certificate (containing a notation regarding the divorce).
Evangelina denied that she and Miguel were divorced in Mexico. She disputed the authenticity of the records purporting to show a 1959 Mexican divorce. Evangelina introduced testimony that the records were irregular on their face and had been fraudulently created or altered. The validity of the purported Mexican divorce is the subject of litigation in Mexico.
The trial court denied the plea to the jurisdiction. It declined the request to take judicial notice of the Mexican court records and declined to recognize the validity of the purported 1959 divorce, but allowed the documents to become part of the court record. Our court denied Ernesto Carrillo and Texas LPG Storage Company's subsequent mandamus petition challenging the trial court's denial of their plea to the jurisdiction. See In re Carrillo , No. 01-15-00322-CV, 2015 WL 2228067, at *1 (Tex. App.-Houston [1st Dist.] May 12, 2015, orig. proceeding [mand. denied] ) (mem. op.) (per curiam).
Litigation regarding the validity of the purported 1959 Mexican divorce has continued in Mexico during the pendency of this appeal.
Evangelina nonsuits the third-party defendants (twice).
Beginning in February 2015 and continuing through October 2015, Evangelina non-suited the co-respondents named in her petition. See Fuentes v. Zaragoza , 2017 WL 976079, at *1. Approximately a week before trial, however, Evangelina filed a supplemental petition, again naming Esther, Dade Aviation, Abbingdon Marine, Ezar Management, and Ezar Properties as co-respondents. The supplement did not name Ernesto Carrillo or Texas LPG Storage Company. At a pre-trial conference, co-respondents' counsel objected that Evangelina's supplemental petition sought affirmative relief against them. Evangelina pledged that she would not seek relief from the co-respondents, and she again nonsuited them.
The trial court signs a divorce decree and divides the community estate.
The case proceeded to trial without Miguel's participation. Having been nonsuited, the former co-respondents also did not appear.
At the close of evidence, the trial court stated that, subject to the later submission of attorney's fees, it was "going to grant a divorce" in favor of Evangelina. The trial court orally announced that it would accept Evangelina's proposed property division.
Before the trial court signed the final decree, the former co-respondents, including Esther, Dade Aviation, Abbingdon Marine, Ezar Management, Ezar Properties, Eagle Ridge Properties, Ernesto Carrillo, and Texas LPG Storage Company, intervened in the case. These third parties alleged that Evangelina improperly sought to include assets they owned as part of the community estate and have these assets awarded in the division of community property. Eagle Ridge, which was never previously named as a party, also intervened.
In the final divorce decree, the trial court declared 133 business entities-124 in Mexico and elsewhere outside of the United States-to be Miguel's alter egos, and deemed the assets of these entities to be "personal assets of the community estate." The court then divided the community estate by adopting Evangelina's proposed division. It awarded Evangelina (1) half of the estate, including "[a]ll shares and all interest of any kind in and to" 89 of the 133 business entities that the trial *152 court found to be Miguel's alter egos; (2) $537 million in fraud-on-the-community damages; (3) spousal maintenance of $5,000 per month; (4) attorney's fees; and (5) various forms of injunctive relief.
Miguel moved for judgment as a matter of law, a new trial, and modification of the divorce decree. Miguel and several of the intervenors requested findings of fact and conclusions of law. The trial court adopted Evangelina's proposed findings and conclusions. It denied Miguel's motions to modify the judgment and for new trial.
Interim appellate proceedings abound.
Miguel appealed. Myrna Alicia Zaragoza Lopez filed a separate notice of appeal. Ernesto Carrillo and Texas LPG Storage filed a joint notice of appeal. Dade Aviation, Abbingdon Marine, Ezar Management, Ezar Properties, Eagle Ridge Properties, and Esther also jointly filed a notice of appeal.
The trial court set the amount required to supersede the judgment during the appeal at $278.3 million. We granted Miguel's motion challenging the amount of the supersedeas bond and reduced the amount to $25 million. See Fuentes v. Zaragoza , No. 01-16-00251-CV, 2016 WL 3023811, at *4 (Tex. App.-Houston [1st Dist.] May 26, 2016, order). Miguel posted the $25 million supersedeas bond. We later granted mandamus relief to enforce the supersedeas bond. See In re Fuentes , 530 S.W.3d 244, 250-52 (Tex. App.-Houston [1st Dist.] 2017, orig. proceeding).
During the supersedeas bond dispute, Evangelina sought temporary relief in the trial court, including spousal support and payment of her attorney's fees. See TEX. FAM. CODE § 6.709. The trial court ordered Miguel to pay Evangelina $300,000 in monthly support and $50,000 in monthly attorney's fees during the pendency of the appeal.
Miguel petitioned this court for a writ of mandamus, challenging the temporary orders as (1) untimely and outside of the trial court's jurisdiction; and (2) lacking sufficient evidence to support them. See In re Fuentes , 506 S.W.3d 586, 590 (Tex. App.-Houston [1st Dist.] 2016, orig. proceeding [mand. denied] ). We rejected Miguel's argument that the temporary orders were untimely, but we conditionally granted relief on the basis that the trial court abused its discretion by awarding spousal support and attorney's fees in the absence of legally sufficient supporting evidence. Id. at 594. We directed the trial court to "modify its order of temporary support and attorney's fees consistent with this opinion within 30 days." Id.
On remand, the trial court reconsidered Evangelina's request for temporary orders. It overruled Miguel's objections and again awarded Evangelina $350,000 in monthly support and attorney's fees. The new order awarded the same total amount, but this time apportioned $250,000 in monthly support and $100,000 in monthly attorney's fees. The trial court added a separate award of $6.4 million in "past attorney's fees" to Evangelina and granted her the exclusive use of certain properties, including the El Paso residence. The trial court also appointed a receiver to "monitor and report on all real and personal property awarded."
Miguel again petitioned for writ of mandamus, challenging each aspect of the modified temporary orders. See In re Fuentes , No. 01-16-00951-CV, 2017 WL 3184760, at *1 (Tex. App.-Houston [1st Dist.] July 27, 2017, orig. proceeding) (mem. op.). Miguel also appealed the trial court's order appointing a receiver. See Fuentes v. Zaragoza , 534 S.W.3d 658, 660 (Tex. App.-Houston [1st Dist.] 2017, no pet.).
*153 Concluding that the modified awards, like the original ones, lacked evidentiary support, we conditionally granted mandamus relief directing the trial court to vacate its temporary orders. In re Fuentes , 2017 WL 3184760, at *5-9. In the appeal from the order appointing the receiver, we reversed, holding that the trial court lacked jurisdiction to make that appointment. Fuentes , 534 S.W.3d at 666.
The parties have completed briefing on the merits in this appeal, and thus we turn to the issues they raise.
Discussion
I. Jurisdiction
In his appeal, Miguel challenges the trial court's subject-matter and personal jurisdiction. Alternatively, he contends that the trial court should have declined to exercise its jurisdiction as a matter of comity, in deference to the ongoing Mexican litigation. We address Miguel's jurisdictional and comity arguments separately. See Acain v. Int'l Plant Servs. , LLC , 449 S.W.3d 655, 659 (Tex. App.-Houston [1st Dist.] 2014, pet. denied) (whether subject-matter jurisdiction exists presents legal question subject to de novo review; declining jurisdiction on basis of comity is discretionary and subject to abuse-of-discretion standard).
A. Subject-Matter Jurisdiction
Miguel contends that he and Evangelina were no longer married when she petitioned for divorce in Harris County, and thus the trial court lacked subject-matter jurisdiction over Evangelina's petition.
1. Standard of review
Subject-matter jurisdiction concerns the court's "power to hear and determine cases of the general class to which the particular one belongs." Middleton v. Murff , 689 S.W.2d 212, 213 (Tex. 1985) (per curiam). Subject-matter jurisdiction is essential for a court to have authority to decide a case; it is not presumed and cannot be waived or conferred by consent. See Dubai Petrol. Co. v. Kazi , 12 S.W.3d 71, 76 (Tex. 2000) ; Tex. Ass'n of Bus. v. Tex. Air Control Bd. , 852 S.W.2d 440, 443-44 (Tex. 1993) ; see also Alfonso v. Skadden , 251 S.W.3d 52, 55 (Tex. 2008) (per curiam) (subject-matter jurisdiction cannot be waived and can be raised at any time). Whether a trial court has subject-matter jurisdiction is a question of law subject to de novo review. See Mayhew v. Town of Sunnyvale , 964 S.W.2d 922, 928 (Tex. 1998) ; In re G.S.G. , 145 S.W.3d 351, 353 (Tex. App.-Houston [14th Dist.] 2004, no pet.).
2. Jurisdiction to hear a divorce
Texas law presumes that every marriage is valid. See TEX. FAM. CODE § 1.101 ("[E]very marriage entered into in this state is presumed to be valid unless expressly made void by Chapter 6 or unless expressly made voidable by Chapter 6 and annulled as provided by that chapter."). The presumption applies to persons who were married outside the state of Texas, like Miguel and Evangelina. See TEX. FAM. CODE § 1.103 ("The law of this state applies to persons married elsewhere who are domiciled in this state.").
A valid marriage must exist for a trial court to have subject-matter jurisdiction over a suit for the spouses' divorce. Gray v. Gray , 354 S.W.2d 948, 949 (Tex. Civ. App.-Houston 1962, writ dism'd) ("A suit for divorce presumes a valid marriage."). If a marriage previously was legally dissolved, then the court lacks subject-matter jurisdiction to again dissolve that marriage. See Ashfaq v. Ashfaq , 467 S.W.3d 539, 544 (Tex. App.-Houston [1st Dist.] 2015, no pet.) (trial court properly dismissed for lack of jurisdiction where parties had divorced before filing for divorce *154 in Texas); Fidalgo v. Galan , No. 13-01-469-CV, 2003 WL 21982186, at *3 (Tex. App.-Corpus Christi Aug. 21, 2003, no pet.) (not designated for publication) (affirming dismissal of divorce action, holding that "subject matter jurisdiction was lacking because there was no live controversy," where trial court found that "a previous divorce action had been filed by [appellant] in Mexico that resulted in the issuance of a divorce decree and orders and relief identical to the relief sought in the Texas divorce action").
3. Recognition of the Mexican decree
Miguel's argument that the trial court lacked subject-matter jurisdiction rests on his contention that the trial court was bound to recognize the 1959 Mexican divorce. Evangelina responds that the trial court reasonably refused to recognize the Mexican divorce based on evidence that the documents offered to establish that divorce were fraudulent or obtained without due process, including lack of notice to her of the proceedings.
A trial court may decline to recognize a foreign judgment obtained without due process. Recognition of a foreign judgment in the absence of due process constitutes an abuse of discretion. Ashfaq , 467 S.W.3d at 541. "[D]ue process requires that no other jurisdiction shall give effect, even as a matter of comity, to a judgment elsewhere acquired without due process." Id. at 542-43 (quoting Griffin v. Griffin , 327 U.S. 220, 229, 66 S.Ct. 556, 90 L.Ed. 635 (1946) ); accord In re E.H. , 450 S.W.3d 166, 172 (Tex. App.-Houston [14th Dist.] 2014, pet. denied). The Full Faith and Credit Clause of the United States Constitution does not require a domestic court to give binding effect to a foreign country judgment when the validity of the judgment is disputed. See Reading & Bates Constr. Co. v. Baker Energy Res. Corp. , 976 S.W.2d 702, 714-15 (Tex. App.-Houston [1st Dist.] 1998, pet. denied) ("Texas, like its sister states, is not constitutionally required to give full faith and credit to the judgments of foreign countries.") (emphasis in original); Schacht v. Schacht , 435 S.W.2d 197, 202 (Tex. Civ. App.-Dallas 1968, no writ) (holding that Texas court was not required to recognize Mexican divorce decree because Full Faith and Credit Clause of U.S. Constitution "does not require that binding effect and validity be given a judgment of a foreign country such as Mexico, more especially where such judgments are shown to be invalid"); see also In re E.H., 450 S.W.3d at 170.
In this case, the trial court heard testimony that the parties have been continuously married from 1953 until Evangelina filed for divorce in Harris County. Miguel and Evangelina's 1953 marriage certificate, issued by the State of New Mexico, was introduced into evidence. Evangelina testified that she had never filed for divorce from Miguel until filing for divorce in Harris County.
The trial court also heard testimony disputing the validity of the purported 1959 divorce in Mexico. Evangelina introduced testimony from Ignacio Morales Lechuga, a licensed lawyer in Mexico who teaches contract law and practices family law as a district attorney and notary public in Mexico. He reviewed the disputed divorce documents and testified as to their irregularities, including:
• The stamp on Evangelina's Original Petition for Divorce does not match the stamps used and required in 1959, when the petition was alleged to have been filed.
• In 1959, witnesses could not be used to prove a marriage or a child's parentage, but no marriage certificate or birth certificates of the children *155 were included in the alleged divorce as would be expected at that time.
• Evangelina and Miguel had four children in 1959, but the petition mentions only three.
• Despite the legal requirement existing in 1959 that a divorce decree contain provisions for the support of minor children, none was made in the decree.
• After the divorce decree was signed and not appealed, an executory declaration rendering the divorce final and unappealable should have issued in a matter of days; however, no final judgment was entered in the case until 2014 and, in his 40 years of practicing family law, Morales Lechuga has never seen a 55-year delay between the entry of a decree and the entry of a final unappealable judgment.
• Notations of the divorce on Evangelina and Miguel's birth certificates were not made until October 7, 2014.
• In 1959, Mexican law required that a divorce be published in a newspaper or periodical but no evidence was found of any publication.
Morales Lechuga reasoned that the irregularities in the documents could be explained by either of two things: (1) the documents are authentic but were false when filed or (2) they were never filed and the whole divorce is false. Morales Lechuga opined that the records reflected a process that did not comply with Mexican law and was "null."
Evangelina also provided testimony from Miguel Alessio Robles, a professor of family and real estate law in Mexico who had served as chief legal counsel to the President of Mexico. Robles testified as to various irregularities in the divorce documents and concluded that "All these irregularities are against the law. The procedure is a fraud...." Luis Alfonso Cervantes Munoz, a family law lawyer in Mexico, further testified that he believed the divorce proceeding to be fraudulent.
Several of Miguel and Evangelina's children testified that they had no knowledge that their parents had been divorced in 1959; they had only known them to be married. Evangelina and Miguel lived together until 2009 and celebrated wedding anniversaries for about 50 years after the alleged divorce in 1959. The trial court heard testimony from Father Jose Maria Rubin, a Catholic priest who was invited to celebrate the mass at the Zaragozas' 50th wedding anniversary.
Based on the record, the trial court acted within its discretion in declining to recognize the 1959 Mexican divorce decree as invalidating the New Mexico marriage. Legally sufficient evidence supports its determination that the parties were married at the time Evangelina initiated divorce proceedings in Harris County. Accordingly, we hold that the trial court had subject-matter jurisdiction over the divorce proceeding.
4. Allegation of subsequent marriage
For the first time on appeal, Miguel claims that, after he and Evangelina divorced in 1959, he married another woman, Alma Margarita Rodriguez Gutierrez (Margarita), on June 11, 1959 in Mexico. Miguel argues that his subsequent marriage to Margarita is presumed valid under the laws of both Texas and Mexico, and the existence of that subsequent marriage refutes Evangelina's presumption that the parties were married when she filed for divorce. See Tex. Emp'rs' Ins. Ass'n v. Gomez , 313 S.W.2d 956, 958 (Tex. Civ. App.-Eastland 1958, writ ref'd n.r.e.) ("A subsequent marriage is presumed to be valid and the burden of proving the contrary rests upon the party who questions *156 the validity of the subsequent marriage.").
Miguel did not raise or proffer evidence of a subsequent marriage in the trial court, either in his special appearance or during trial. Maria Laura Zaragoza Rodriguez de Reyes, Miguel and Margarita's daughter who intervened in the case, attached a 1959 marriage certificate to her pleading in response to Evangelina's motion to strike her intervention. The trial court struck Maria's intervention, and Maria did not participate at trial. Although Maria filed a notice of appeal, she voluntarily dismissed her appeal. Myrna Alicia Zaragoza Lopez's motion for sanctions against Evangelina's counsel also attached a copy of a 1959 marriage certificate. But no party adduced any evidence at trial showing that Miguel had a subsequent marriage to Margarita.
Because the trial court had no evidence of a subsequent marriage between Miguel and Margarita before it, Miguel failed to controvert the presumption of a valid marriage to Evangelina. Further, even if Miguel had demonstrated that a subsequent marriage existed, Evangelina's challenge to the validity of the 1959 divorce necessarily challenges the validity of any subsequent marriage. Evangelina adduced evidence that she was never divorced from Miguel and that the Mexican divorce decree was insufficient to overcome the statutory presumption that Miguel's marriage to Evangelina was valid. With no controverting evidence before it, we conclude that the trial court did not err in determining that it had subject-matter jurisdiction over Evangelina's petition for divorce.
B. Personal Jurisdiction
Miguel next challenges the trial court's exercise of personal jurisdiction over him, contending that he lacks sufficient contacts with Texas. Whether a trial court has personal jurisdiction over a defendant is a question of law, which we review de novo. See Retamco Operating, Inc. v. Republic Drilling Co. , 278 S.W.3d 333, 337 (Tex. 2009).
Miguel contends that he is not a resident of Texas, and thus Texas courts have no jurisdiction over him for purposes of securing a divorce. Evangelina responds that the trial court properly exercised personal jurisdiction over Miguel because (1) he committed a tort in Texas, (2) Miguel and Evangelina's last marital residence was in Texas, and (3) exercising personal jurisdiction over Miguel is consistent with due process.
1. Committing a tort in Texas
Evangelina first asserts that Miguel is subject to personal jurisdiction in Texas because Miguel committed torts in Texas. The Texas long-arm statute broadly allows courts to exercise personal jurisdiction over a non-resident who "commits a tort in whole or in part in this state." TEX. CIV. PRAC. & REM. CODE § 17.042(2). Evangelina alleges that Miguel committed fraud and breached fiduciary duties that he owed to her by using community funds to (1) support Esther and her children in El Paso and Dallas; (2) support schools in Texas attended by Esther's children, including St. Clement School in El Paso and Southern Methodist University in Dallas; (3) purchase a $992,450 condominium in Dallas for Esther's son; and (4) build a mansion in El Paso for Esther and her family.
These alleged wrongs do not provide a basis for exercising personal jurisdiction over Miguel. Claims for fraud on the community and breach of fiduciary duty in a divorce are not independent torts. See Schlueter v. Schlueter , 975 S.W.2d 584, 589 (Tex. 1998) (holding that "there is no independent tort cause of action for wrongful disposition by a spouse of community assets").
*157 The Texas Supreme Court has explained:
[W]aste, fraudulent transfer, or other damage to community property are claims belonging to the community itself, so they must be included in the trial court's just-and-right division of community property upon divorce. Allowing independent torts between spouses for community damage would thus require fault to be determined twice-once in the tort action, and again in the property division. To avoid that, the just-and-right division is the "sole method" for adjudicating such claims, and "no independent cause of action exists in Texas ... when the wrongful act defrauded the community estate."
Chu v. Hong , 249 S.W.3d 441, 444-45 (Tex. 2008). Evangelina's allegations of Miguel's wrongful conduct do not demonstrate that Miguel committed any element of an independent tort in Texas.
Accordingly, we hold that section 17.042(2) does not supply a basis for exercising personal jurisdiction over Miguel.
2. Last marital residence
Evangelina next relies on Section 6.305(a) of the Texas Family Code, which permits Texas courts to exercise personal jurisdiction over a nonresident spouse if the parties' last marital residence was in Texas, or if any other basis consistent with state and federal constitutions exists. See TEX. FAM. CODE § 6.305(a). Section 6.305(a) provides:
(a) If the petitioner in a suit for dissolution of a marriage is a resident or a domiciliary of this state at the time the suit for dissolution is filed, the court may exercise personal jurisdiction over the respondent or over the respondent's personal representative although the respondent is not a resident of this state if:
(1) this state is the last marital residence of the petitioner and the respondent and the suit is filed before the second anniversary of the date on which marital residence ended; or
(2) there is any basis consistent with the constitutions of this state and the United States for the exercise of the personal jurisdiction.
TEX. FAM. CODE § 6.305(a).
Subsection (a)(1) does not apply in this case because Evangelina filed for divorce more than two years after the parties' marital residence in Texas ended. Evangelina's petition concedes that she and Miguel stopped residing together in 2009, more than two years before Evangelina filed her divorce petition. Because subsection (a)(1) does not provide personal jurisdiction over Miguel, we turn to whether the trial court had personal jurisdiction under subsection (a)(2).
3. Basis consistent with due process for the exercise of personal jurisdiction
Section 6.305(a)(2) permits exercising personal jurisdiction over a nonresident spouse on any basis consistent with the state and federal constitutions. This state law provision embodies the due process guarantees enshrined in the United States Constitution, permitting "a state court [to] take personal jurisdiction over a defendant only if it has some minimum, purposeful contacts with the state, and the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice." CMMC v. Salinas , 929 S.W.2d 435, 437 (Tex. 1996) ; see also Int'lShoe Co. v. Washington , 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).
Federal due process protects a person's liberty interest, preventing the person from being bound to a judgment in a forum with which he has established no meaningful contacts, ties, or relations.
*158 Burger King Corp. v. Rudzewicz , 471 U.S. 462, 471-72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citing Int'lShoe Co. , 326 U.S. at 319, 66 S.Ct. 154 ). A state may exercise personal jurisdiction over a nonresident defendant only if the defendant has purposefully established minimum contacts with the forum state, and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. Burger King , 471 U.S. at 476, 105 S.Ct. 2174.
In determining whether minimum contacts exist between a defendant and the forum state, we focus on whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Id. at 474, 105 S.Ct. 2174. This requirement ensures that a nonresident defendant will not be called into a jurisdiction based solely on random or fortuitous contacts or the unilateral activity of another party. Id. at 475, 105 S.Ct. 2174 ; see also Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C. , 815 S.W.2d 223, 226 (Tex. 1991).
At the hearing on Miguel's special appearance, Evangelina offered testimony from Alejandra Zaragoza Sterling, the youngest of their children, describing Miguel's contacts with Texas. Miguel did not provide any testimony in support of his special appearance or to rebut Alejandra's testimony. Alejandra testified that:
• Miguel maintains a personal office in the El Paso airplane hangar where he maintains his planes, and she frequently visited him there as late as December 2012;
• Miguel holds family business meetings in El Paso every two months, and has held approximately 300 such meetings there, with the last occurring in April 2013;
• Miguel maintains control of several Texas companies;
• until 2009, Miguel would sometimes stay with Evangelina at their home in El Paso; and
• in more recent years, Miguel has stayed with Esther and their daughter at another home in El Paso, and he takes their daughter to school in El Paso.
All of Miguel and Evangelina's eleven children were born in El Paso, Texas. Evangelina also provided, and the trial court took judicial notice of, a case file containing documents indicating that Miguel was building a residence in El Paso. The architect employed to build the residence accepted service for Miguel.
These Texas contacts were not "random or fortuitous" or the result of unilateral activity by Evangelina. See Aduli v. Aduli , 368 S.W.3d 805, 816 (Tex. App.-Houston [14th Dist.] 2012, no pet.) (holding that nonresident husband in divorce had sufficient minimum contacts because he "purchased, furnished, and made mortgage and utility payments on the condo in Houston; visited Houston several times a month for a few days at a time; and sent [wife] $1,000 per month as a stipend"). We hold that Evangelina adduced legally sufficient evidence for the trial court to find that Miguel had sufficient contacts with Texas to support personal jurisdiction.
Finally, we must determine whether the exercise of jurisdiction comported with the due process requirement of fair play and substantial justice. In undertaking this inquiry, we consider (1) the burden on Miguel; (2) Texas's interest in adjudicating the dispute; (3) Evangelina's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversies; and (5) the shared interest of the several states in furthering fundamental *159 substantive social policies. See Guardian Royal , 815 S.W.2d at 231 ; Phillips v. Phillips , 826 S.W.2d 746, 748 (Tex. App.-Houston [14th Dist.] 1992, no writ). Only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when minimum contacts are established. Guardian Royal , 815 S.W.2d at 231.
There was no evidence, and Miguel did not represent, that it would be an excessive burden for him to travel to Texas for the divorce proceedings. The dispute involves significant property located within the state, and Texas has an interest in disputes involving the disposition of real property inside its borders. See Aduli , 368 S.W.3d at 817 ; Goodenbour v. Goodenbour , 64 S.W.3d 69, 80 (Tex. App.-Austin 2001, pet. denied). In light of these circumstances, we conclude that the exercise of personal jurisdiction over Miguel does not offend fair play and substantial justice.
Miguel contends that the contacts attributed to him are business-based and, as a result, cannot be imputed to him in his individual capacity as a basis for exercising jurisdiction over him in the divorce proceeding. Miguel invokes the "fiduciary shield doctrine," which is based on the principle that an individual's transaction of business in Texas as the employee of a corporation does not create personal jurisdiction over that individual. See Garner v. Furmanite Austl. Pty., Ltd. , 966 S.W.2d 798, 803 (Tex. App.-Houston [1st Dist.] 1998, pet. denied) ("The 'fiduciary shield' doctrine protects an employee of a company from personal jurisdiction when the employee's actions have been on behalf of his employer."); Yujie Ren v. ANU Res., LLC , 502 S.W.3d 840, 849 (Tex. App.-Houston [14th Dist.] 2016, no pet.) ("Under the fiduciary shield doctrine, a nonresident officer or employee may not be subject to personal jurisdiction when all of his contacts with the forum state were made on behalf of his corporation or employer."). The record, however, demonstrates that Miguel's contacts with Texas are not solely business-related; he has personal contacts unrelated to his business dealings, and his business dealings also involve family. Evangelina adduced evidence that Miguel has resided in both El Paso and Juarez, raised their children and his daughter with Esther in El Paso, is building a home in El Paso, and spent substantial personal funds in Texas on personal matters. The fiduciary shield doctrine does not apply here because the record shows that Miguel has continuous and systematic personal contacts with Texas.
Lastly, Miguel contends that the trial court did not acquire personal jurisdiction over him because the alternative service of process permitted by the trial court was invalid. Miguel filed a special appearance after he was served, but he did not challenge the method of service in the trial court. The proper time to challenge service of process is at the trial level through a motion to quash. See Kawasaki Steel Corp. v. Middleton , 699 S.W.2d 199, 203 (Tex. 1985) (per curiam) ("We hold that defective jurisdictional allegations in the petition, defective service of process, and defects in the citation must be challenged by a motion to quash, not a special appearance."); City of Houston v. Bryant , 516 S.W.3d 47, 55 (Tex. App.-Houston [1st Dist.] 2017, pet. denied) ("Although a claim of a defect in the service of process challenges whether the trial court's personal jurisdiction over the defendant has been properly invoked, such claims must be raised in a motion to quash, not in a jurisdictional challenge like a special appearance."). Further, a curable defect in service does not defeat a non-resident defendant's amenability to the court's process and serves only to provide the non-resident *160 defendant with more time to answer. See Kawasaki Steel , 699 S.W.2d at 202-03 ; Wright v. Sage Eng'g, Inc. , 137 S.W.3d 238, 245-46 (Tex. App.-Houston [1st Dist.] 2004, pet. denied), abrogated on other grounds , Michiana Easy Livin' Country, Inc. v. Holten , 168 S.W.3d 777 (Tex. 2005) ; see also Bryant, 516 S.W.3d at 55. Accordingly, the use of alternative service of process on Miguel did not deprive the trial court of personal jurisdiction over him.
We hold that the trial court properly denied Miguel's challenges to personal jurisdiction.
II. Comity
Because we conclude that the trial court had jurisdiction over the divorce proceeding, we turn to Miguel's alternative argument that the trial court abused its discretion in not deferring, as a matter of comity, to the Mexican courts currently deciding the 1959 divorce's validity. Miguel asserts that the trial court should have dismissed or abated this suit as a matter of comity because (1) he and Evangelina are citizens of Mexico and (2) the validity of the Mexican divorce turns on the application of Mexican law and is being considered by courts in Mexico.
Evangelina responds that the Texas divorce proceeding does not implicate comity because (1) Miguel waived the issue by failing to raise it in the trial court, (2) she has resided in Texas since 2009, and (3) Texas has a demonstrated interest in resolving the divorce because Miguel improperly has transferred community assets to Texas residents and through Texas businesses.
A. Applicable Law
Texas courts may defer to the sovereignty of foreign nations according to principles of international comity. See K.D.F. v. Rex , 878 S.W.2d 589, 593 (Tex. 1994) (orig. proceeding). Because courts have discretion over whether to dismiss or abate a case on the basis of comity, we review whether the trial court should have deferred to the Mexican courts for an abuse of discretion. See Ashfaq , 467 S.W.3d at 541 ; Acain , 449 S.W.3d at 659 ; see also Seguros Del Estado, S.A. v. Sci. Games, Inc. , 262 F.3d 1164, 1169 (11th Cir. 2001) ; Jota v. Texaco, Inc. , 157 F.3d 153, 160 (2d Cir. 1998) ; Griffith v. Griffith , 341 S.W.3d 43, 54 (Tex. App.-San Antonio 2011, no pet.) ("Being voluntary and not obligatory, the application of comity vests in the sound discretion of the tribunal of the forum.") (quoting Nowell v. Nowell , 408 S.W.2d 550, 553 (Tex. Civ. App.-Dallas 1966, writ dism'd) ).
Texas Rule of Civil Procedure 308b provides procedures for determining recognition, as a matter of comity, of foreign judgments in suits involving a marital relationship. TEX. R. CIV. P. 308b(b)(1).[2] With two exceptions not pertinent to this case, the rule "applies to the recognition or enforcement of a judgment or arbitration award based on foreign law in a suit involving a marriage relationship or a parent-child relationship under the Family Code." TEX. R. CIV. P. 308b(b)(1).
Rule 308b requires that a party seeking enforcement of a judgment based on foreign law must, within 60 days of filing an original pleading, serve the court and all parties with written notice describing the court's authority to enforce or decide to enforce the foreign judgment or award. TEX. R. CIV. P. 308b(d)(1). Within 30 days of service, the party opposing enforcement must give the court and all parties a written *161 response explaining the basis for opposition and stating whether the party asserts that the judgment or award violates constitutional rights or public policy. TEX. R. CIV. P. 308b(d)(2). Within 75 days of the date that a party serves notice seeking enforcement, the court must hold a pretrial conference to set deadlines and make other orders regarding (1) the submission of materials for the court to consider in determining foreign law, (2) the translation of foreign-language documents, and (3) the designation of expert witnesses. TEX. R. CIV. P. 308b(e).
At least 30 days before trial, the court must conduct a hearing to determine whether to enforce the judgment. TEX. R. CIV. P. 308b(f)(1). Within 15 days of the hearing, the court must issue a written order on the determination that includes findings of fact and conclusions of law. TEX. R. CIV. P. 308b(f)(2). The court may issue any order necessary to preserve the principles of comity while protecting against violations of constitutional rights and public policy. TEX. R. CIV. P. 308b(f)(3). In keeping with these requirements, the court must independently determine whether to enforce the judgment even if no party opposes enforcement. TEX. R. CIV. P. 308b(f)(4).
B. Analysis
The 1959 divorce purportedly occurred in Mexico and its validity in Mexico rests on Mexican law. Evangelina claims that the 1959 divorce is fraudulent and that wrongful conduct occurred in Mexico. Both Miguel and Evangelina are citizens of Mexico. Miguel and Evangelina resided in Juarez, Mexico and El Paso during the marriage. Evangelina began living in the United States in 2009, when she ceased living with Miguel. Evangelina maintains residences in Mexico and the United States. The property at issue in the divorce is located both in Texas and outside the United States. Mexico has an interest in determining the validity of the 1959 Mexican divorce decree because both parties are Mexican citizens and are actively litigating its validity in the Mexican courts.
During the default-judgment hearing, the trial court declined to take judicial notice of either the Mexican divorce or the ongoing litigation in Mexico regarding its validity. Evangelina correctly observes that Miguel never asked the trial court to abate the proceedings in favor of Mexico or defer to the Mexican adjudication of the validity of the divorce decree on the basis of comity. She thus contends that the issue of comity has not been preserved for our review.
Assuming that a party must raise the issue of comity in a challenge independent of those to subject-matter and personal jurisdiction, we note that the co-appellants challenged the trial court's jurisdiction based on the 1959 divorce. Having been nonsuited before trial, these parties had no opportunity to request deference to the Mexican proceedings adjudicating that issue. As we discuss further below, the judgment against the co-appellants cannot stand because they did not receive adequate notice and an opportunity to be heard in the trial court, and the judgment against Miguel must be reversed because it is not supported by the evidence. Because we reverse the judgment on these other grounds, the trial court must determine on remand whether comity requires deference to the current Mexican proceedings addressing the 1959 divorce decree's validity. The trial court must apply the requirements of Texas Rule of Civil Procedure 308b in making this determination.
III. Division of the Community Estate
The trial court's decision granting the default judgment was based on facts in the divorce petition that it deemed admitted due to Miguel's failure to participate in *162 the trial proceedings. The trial court's findings as to the value of the community estate and its division of property, including its finding that various entities are Miguel's alter egos and their property thus is part of the community estate, hinge on these deemed admissions.
The trial court erred in dividing the community estate based on the allegations in Evangelina's petition without requiring competent evidence to support them. This fundamental error affected all parts of the decree, including the division of property interests and awards for fraud on the community, spousal maintenance, and attorney's fees. We address the error and its effect on each part of the trial court's judgment.
A. Standard of Review
The Family Code requires the trial court to divide the "estate of the parties" to the marriage as "the court deems just and right, having due regard for the rights of each party." TEX. FAM. CODE § 7.001 ; see Hailey v. Hailey , 176 S.W.3d 374, 380 (Tex. App.-Houston [1st Dist.] 2004, no pet.). Each spouse has the burden to present sufficient evidence of the value of the community estate to enable the trial court to make a just and right division. See Finch v. Finch , 825 S.W.2d 218, 221 (Tex. App.-Houston [1st Dist.] 1992, no writ). The division of a community estate need not be equal; there must only be a reasonable basis for the division. See ids="9969340" index="74" url="https://cite.case.law/sw2d/825/218/#p221">id. A trial court may decree an unequal division of an estate as long as a reasonable basis for doing so exists. See Vannerson v. Vannerson , 857 S.W.2d 659, 669 (Tex. App.-Houston [1st Dist.] 1993, writ. denied).
We review property-division issues for abuse of discretion. See Stafford v. Stafford , 726 S.W.2d 14, 16 (Tex. 1987) ; Bell v. Bell , 513 S.W.2d 20, 22 (Tex. 1974) ; Barras v. Barras , 396 S.W.3d 154, 164 (Tex. App.-Houston [14th Dist.] 2013, pet. denied). A trial court has wide latitude in how it divides a community estate, and we presume that the trial court properly exercised its discretion. See Schlueter v. Schlueter , 975 S.W.2d 584, 589 (Tex. 1998) ; Murff v. Murff , 615 S.W.2d 696, 698 (Tex. 1981) ; Vannerson , 857 S.W.2d at 668. A trial court abuses its discretion when it acts arbitrarily or unreasonably, and without reference to any guiding rules or principles. See Ayala v. Ayala , 387 S.W.3d 721, 731 (Tex. App.-Houston [1st Dist.] 2011, no pet.) ; Hailey , 176 S.W.3d at 380 ; Evans v. Evans , 14 S.W.3d 343, 346 (Tex. App.-Houston [14th Dist.] 2000, no pet.) (citing Worford v. Stamper , 801 S.W.2d 108, 109 (Tex. 1990) ).
In reviewing the trial court's property division, we must consider whether the trial court had sufficient information upon which to exercise its discretion. Willis v. Willis , 533 S.W.3d 547, 551 (Tex. App.-Houston [14th Dist.] 2017, no pet.). A trial court abuses its discretion in dividing the community estate if insufficient evidence supports the division. Wilson v. Wilson , 132 S.W.3d 533, 537 (Tex. App.-Houston [1st Dist.] 2004, pet. denied). A petition in a divorce case may not be taken as confessed even if the respondent fails to file an answer. See TEX. FAM. CODE § 6.701. Accordingly, a trial court abuses its discretion in dividing the community estate based on the respondent's default where the record does not support the valuation and division of the estate. See, e.g. , Chapa v. Chapa , No. 04-17-00345-CV, 2018 WL 1934240, at *2 (Tex. App.-San Antonio Apr. 25, 2018, no pet.) (mem. op.) (holding that trial court abused its discretion in default divorce decree's division of community estate because no evidence in record supported conclusion that division was "just and right").
*163 B. Deemed Admissions
The trial court relied on Miguel's default in its division of the community estate. The trial court's findings and conclusions declare that Miguel, by failing to appear, "admitted" the allegations in Evangelina's petition:
By choosing not to contest Petitioner's allegations, the Court finds that they are admitted as true. See Hurst v. A.R.A. Mfg. Co. , 555 S.W.2d 141, 142 (Tex. Civ. App.-Fort Worth 1977, writ ref'd n.r.e.) ; see also Morris v. Zesati , 162 S.W.3d 669, 671 (Tex. App.-El Paso 2005, no pet.).
* * *
The Court took a nihil dicit default judgment. Under the nihil dicit default judgment, the non-answering party has "admitted" the properly pled facts. Sedona Pac. Hous. P'ship v. Ventura , 408 S.W.3d 507, 512 (Tex. App.-El Paso 2013, no pet.) (citing Stoner v. Thompson , 578 S.W.2d 679, 682 (Tex. 1979) ).
The decree made similar representations.
These findings and conclusions by the trial court are insufficient to support the judgment because, in a suit for divorce, "the petition may not be taken as confessed if the respondent does not file an answer." TEX. FAM. CODE § 6.701 ; see also Osteen v. Osteen , 38 S.W.3d 809, 814 (Tex. App.-Houston [14th Dist.] 2001, no pet.) ("[Respondent's] failure to answer, however, did not operate to admit the material allegations in [divorce] petition."). Rather, in cases of default, the petitioner in a divorce must nonetheless adduce evidence to support the petition's material allegations. See Ayala , 387 S.W.3d at 726 ; Vazquez v. Vazquez , 292 S.W.3d 80, 83-84 (Tex. App.-Houston [14th Dist.] 2007, no pet.) ; Reavis v. Reavis , No. 01-02-00809-CV, 2003 WL 22922429, at *2 (Tex. App.-Houston [1st Dist.] Dec. 11, 2003, no pet.) (mem. op.); Osteen , 38 S.W.3d at 814 ; Considine v. Considine , 726 S.W.2d 253, 254 (Tex. App.-Austin 1987, no writ) ; see also Mason v. Mason , 282 S.W.2d 320, 320 (Tex. Civ. App.-San Antonio 1955, no writ) ("Default and nil dicit judgments are not recognized in divorce cases...."). The petitioner-even in a default case-must provide sufficient evidence to permit a just and right division of the marital estate. See Colmenero v. Colmenero , No. 01-14-00071-CV, 2015 WL 1245849, at *3 (Tex. App.-Houston [1st Dist.] Mar. 17, 2015, no pet.) (mem. op.); Wilson , 132 S.W.3d at 537-38. Accordingly, we hold that the allegations in Evangelina's petition for divorce are not deemed to be true, and the trial court's default judgment is subject to an evidentiary attack on appeal. See Vazquez , 292 S.W.3d at 84 ; Osteen , 38 S.W.3d at 814 ; Considine , 726 S.W.2d at 254.
The cases cited by the trial court in its findings of fact and conclusions of law are inapplicable. Both Hurst and Morris , the cases relied on by the trial court for deeming the petition's allegations as true, did not involve divorce judgments. See Morris v. Zesati , 162 S.W.3d 669, 670 (Tex. App.-El Paso 2005, no pet.) ; Hurst v. A.R.A. Mfg. Co. , 555 S.W.2d 141, 142 (Tex. Civ. App.-Fort Worth 1977, writ ref'd n.r.e.). Hurst involved a default judgment for fraud obtained by one company against two other companies and their president. 555 S.W.2d at 142. Morris involved a default judgment for breach of contract. 162 S.W.3d at 670-71. Sedona Pacific , the case cited by the trial court for taking a nihil dicit judgment, is similarly inapplicable because it involved a default judgment in an action for wrongful foreclosure. Sedona Pac. Hous. P'ship v. Ventura , 408 S.W.3d 507, 510 (Tex. App.-El Paso 2013, no pet.).
Evangelina had the burden to present legally and factually sufficient proof supporting all material allegations in her divorce *164 petition, including the community estate's composition and its just and right division. We hold that the trial court erred in accepting Evangelina's pleadings without requiring evidence of a just and right division of the community assets.
C. Waiver
The trial court ruled that Miguel waived any right to contest the property division by failing to provide values for the properties to be divided, stating in its findings and conclusions that:
Respondent chose not to provide values for the properties to be divided, so he has waived his right to complain about the just and right division.
* * *
The trial court is under no obligation to make findings on facts that were not contested or presented to the court. Moreover, when a party does not provide values for the property to be divided, that party may not complain on appeal that the trial court lacked sufficient information to properly divide the property.
Evangelina asserts that Miguel cannot challenge the sufficiency of the evidence supporting the property division or the alter-ego findings because he was responsible for the lack of evidence.
Evangelina relies upon the invited-error doctrine. See, e.g. , Keith v. Keith , 221 S.W.3d 156, 163 (Tex. App.-Houston [1st Dist.] 2006, no pet.). But that doctrine applies when the appealing party affirmatively requested the relief it challenges on appeal, which is not the case here. See Tittizer v. Union Gas Corp. , 171 S.W.3d 857, 862 (Tex. 2005) (per curiam); see also Keith , 221 S.W.3d at 163 ("Further, under the doctrine of invited error, an appellant may not complain on appeal that a court granted the appellant's own request.").
Citing Bello v. Bello , No. 01-11-00594-CV, 2013 WL 4507876 (Tex. App.-Houston [1st Dist.] Aug. 22, 2013, no pet.) (mem. op.), Evangelina further contends that a party who fails to present valuation evidence cannot complain about the property division on appeal. 2013 WL 4507876, at *5. In Bello , however, the trial court's division was supported by evidence introduced by the petitioner. See id. at *4-5. Respondent could not complain about the division on appeal because no evidence in the record controverted the petitioner's evidence that the division was just and fair. Id. at *5. Bello , thus, reaffirmed that "[e]ach party in a divorce proceeding has a burden to present sufficient evidence of the value of the community estate to enable the trial court to make a just and right division." Id.
In this case, Evangelina bore the burden of providing legally sufficient evidence for the trial court to make an appropriate division. We hold that Miguel did not waive his evidentiary challenge that Evangelina failed to meet this burden.
D. Sufficiency of the Evidence
In reviewing a challenge to the trial court's valuation of the community estate, an appellate court must first consider whether sufficient evidence supports its valuation. Young v. Young , 168 S.W.3d 276, 285 (Tex. App.-Dallas 2005, no pet.) ; Naguib v. Naguib , 137 S.W.3d 367, 374 (Tex. App.-Dallas 2004, pet. denied). If the valuation is erroneous, the appellate court must then determine whether the trial court abused its discretion in dividing the estate. Naguib , 137 S.W.3d at 374.
This record in this case lacks information that could have enabled the trial court to identify the scope of the community estate and equitably divide it. Evangelina's inventory does not assign any values to the business entities that purportedly belonged to the community estate. Absent *165 information as to the relative value of the estate's component parts, an estimate of the value of the estate as a whole does not provide a sufficient basis for a just and right division of the estate. See Colmenero , 2015 WL 1245849, at *3. Evangelina offered no expert or other competent testimony addressing the value of the alleged community assets; she admitted that her inventory contains many blanks as to proposed values because she did not know the values.
Evangelina contends that she could not provide a valuation of the assets because Miguel controls access to the necessary documents and failed to respond to her discovery requests. The trial court found that Miguel withheld documents relating to his companies. Evangelina, however, did not provide any valuation of assets within her knowledge or possession. For instance, Evangelina's inventory identified five airplanes and a yacht, which she apportioned between herself and Miguel. Nothing prevented Evangelina from valuing those assets, but no evidence was offered. Likewise, Evangelina provided no description, itemization, or valuation of any other property in her possession. Evangelina did not subpoena records or move to compel discovery from any of the business entities in which she claims the community estate has an interest. Evangelina sued the co-respondents and designated the business entities as part of the community estate, but she did not seek discovery from these business entities.
In her response brief, Evangelina asserts that the following evidence supports the valuation of the estate and property division:
• "Grupo Zeta has a number of subsidiary corporations under its umbrella, and has assets in excess of $1 billion."
• "From one contract alone, which dealt with the buying and selling of liquid petroleum gas, Grupo Zeta reaped between $54 and $97 million per year in profits."
• "Miguel paid personal credit card bills-including as much as $250,000 per month-with Grupo Zeta funds."
• "Miguel also spent community funds on Esther's family members, donating millions of dollars to her children's schools and buying expensive real estate for her children."
This argument is unpersuasive. First, the trial court's finding that Grupo Zeta has assets in excess of $1 billion is based on a statement made by Miguel's counsel in a motion for continuance of the special-appearance hearing. Our court already has held that his counsel's statement in a motion for continuance is incompetent evidence to support a valuation of the community estate. See Fuentes , 2016 WL 3023811, at *3. This statement does not identify the value of any community assets subject to division between the parties. Second, Evangelina's reliance on a contract between third parties as an example of the wealth of the community estate does not prove the value of any community entity. Finally, Evangelina's evidence relating to Miguel's personal use of funds does not demonstrate the value of the community estate.
Because the property division is unsupported by evidence, it constitutes an abuse of discretion and requires reversal. See Colmenero , 2015 WL 1245849, at *3 ; Wilson , 132 S.W.3d at 538 ("Given the dearth of evidence identifying, describing, and valuing the community estate, we hold that there is insufficient evidence to support the division of assets.").
IV. Alter Ego
Evangelina asked the trial court to deem 133 companies located around the world, *166 comprising what she generally described as the "Zeta Group," to be Miguel's alter egos. The trial court found that these entities were Miguel's alter egos and included them, as a whole, as part of the community estate. Evangelina was awarded ownership of 89 of these entities.
Miguel and the co-appellants assert that the trial court erred by including these entities and their assets as part of the community estate. The co-appellants further claim that (1) the trial court violated their due process rights by divesting them of their property without notice or hearing, (2) the trial court ignored rules on the joinder of necessary parties, and (3) the evidence failed to demonstrate that any of these companies were Miguel's alter egos. We agree on each point.[3]
A. Due Process
As Evangelina requested, the trial court awarded the "alter ego" entities and their assets to either Miguel or Evangelina as their "sole and separate property." The trial court further held that those parties "shall exclusively own, possess, and control" that property. The trial court's decree divests the co-appellants of their right to own, possess, or control the awarded property. See Walsh v. Walsh , 255 S.W.2d 240, 242-43 (Tex. Civ. App.-Amarillo 1952, no writ) (concluding that award of property to wife "in effect divested title out of" third party who claimed ownership).
The right to be heard assumes a full hearing before a court having jurisdiction over the matter, the right to introduce evidence, and the right to judicial findings based on the evidence. See Perry v. Del Rio , 67 S.W.3d 85, 92 (Tex. 2001) ; Pine v. State , 921 S.W.2d 866, 873 (Tex. App.-Houston [14th Dist.] 1996, writ dism'd w.o.j.) ("Fundamental to the concept of due process is the right to be heard."). The record indicates that co-appellants received no meaningful opportunity to present evidence that they owned the disputed property, that these companies were not part of the community estate, and that the various alter-ego, single-enterprise, and other veil-piercing theories did not apply.
One of the co-appellants, Eagle Ridge, was never served. The other co-appellants were not put on notice that their property interests were at stake during the trial. Evangelina had non-suited them before trial and did not serve them with her proposed property division. Nor did she serve them with any later-filed supplemental or amended petition rejoining them in the lawsuit. See Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon , 195 S.W.3d 98, 100 (Tex. 2006) ("[T]he nonsuit extinguishes a case or controversy from the moment the motion is filed....") (quotation omitted). On the eve of trial, Evangelina expressly reaffirmed before the trial court that the co-appellants were not parties and were not subject to any claims for relief; and she filed a second round of non-suits. See Fuentes , 2017 WL 976079, at *1.
The trial court's findings that these companies were Miguel's alter egos do not obviate the requirement that they receive notice and an opportunity to be heard before a judicial divestment can occur. See Metromedia Rest. Servs., Inc. v. Strayhorn , 188 S.W.3d 282, 286 (Tex. App.-Austin 2006, pet. denied) (holding that because unnamed parties "were never properly before the court ... the district court was without jurisdiction to enter judgment against them, and ... the judgment against them is void"). "[C]orporate *167 veil-piercing theories such as alter ego or single business enterprise cannot and do not abrogate the requirements of due process in our judicial system. Parties must still be afforded notice and an opportunity to appear and defend themselves before being subjected to civil liability." Id. ; see also In re Smith , 192 S.W.3d 564, 568-69 (Tex. 2006) (orig. proceeding) (per curiam) (an alter ego finding may not be used to hold non-party liable for judgment); Menetti v. Chavers , 974 S.W.2d 168, 173 (Tex. App.-San Antonio 1998, no pet.) (individuals who plaintiff sought to hold liable for corporate liability under corporate veil-piercing theory "[u]ndoubtedly ... were entitled to defend this claim, as it was the sole basis for finding them liable for the liability of the corporation").
As the Metromedia court explained, all parties alleged to be part of a single enterprise must each be afforded an opportunity to defend against the claims asserted:
[The unnamed parties] could very well want an opportunity to be heard on the issue of whether they are involved in a single business enterprise with [named party]. They may have defenses that are different from the defenses that best serve [named party] or that [named party] has the ability or standing to present. Even if these parties had identical interests and identical defenses, they must-as a matter of due process-be afforded an opportunity to evaluate the claims made by an adverse party and decide for themselves how to defend. Parties with seemingly identical interests can have significant differences in how to protect those interests and how to litigate disputes.
188 S.W.3d at 286. Thus, when a plaintiff alleges "that two separate parties are to be treated as one under the law, [the] plaintiff is required to name and serve each party sought to be held liable" and "[e]ach is entitled to have the opportunity to appear, be heard, and defend." Id. at 287. "The principle is no different when applied to corporate veil-piercing theories being used to establish joint liability." Id.
These principles apply to the trial court's alter-ego findings and its inclusion of business entities in the community estate. Co-appellants were entitled to notice and an opportunity to defend against Evangelina's contention that the entities' organizational structures should be disregarded. They were entitled to defend against her claims that their interests should be included in the division of the community estate. Accordingly, we hold that the decree contravenes the co-appellants' due process rights. See Nelson v. Adams USA, Inc. , 529 U.S 460, 468, 120 S.Ct. 1579, 146 L.Ed.2d 530 (2000) (holding that court violated due process by amending judgment against corporation to apply to its shareholder without first providing shareholder opportunity for trial).
B. Joinder
The Texas Rules of Civil Procedure require the participation of any party that can feasibly be joined if the party "claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest." TEX. R. CIV. P. 39(a). Texas law thus requires the joinder of any third party that claims ownership of an asset which one or both parties to a divorce proceeding seek to classify as community property. See Gibson v. Gibson , 190 S.W.3d 821, 823 (Tex. App.-Fort Worth 2006, no pet.) ("Divesting a partnership that is not a *168 party to a divorce proceeding of partnership property and awarding that property to a nonpartner spouse is reversible error."); Boyo v. Boyo , 196 S.W.3d 409, 420 (Tex. App.-Beaumont 2006, no pet.) (joinder of third party to whom alleged community asset was transferred "permits adjudication of that party's ownership claim to the transferred asset"); In re Burgett , 23 S.W.3d 124, 127 (Tex. App.-Texarkana 2000, orig. proceeding) (adjudication of wife's ownership of alleged community assets in divorce action would not bind third parties claiming to own interest in property); see also Metromedia , 188 S.W.3d at 287.
Like the third parties in Metromedia , it is undisputed that co-appellants hold interests in the real estate and personal property, along with shareholder, partnership, and income interests awarded in the divorce decree. The trial court erred when it divested the co-appellants of their interests without providing them the opportunity to defend against Evangelina's claims and to contest the inclusion of their property interests in the community estate. See Siefkas v. Siefkas , 902 S.W.2d 72, 80 (Tex. App.-El Paso 1995, no writ) (holding trial court erred in awarding wife property that may have been owned by separate legal entity that was not party to proceeding because court did not have authority over property).
The Amarillo Court of Appeals' decision in Walsh is instructive. See 255 S.W.2d at 241-42. In that case, a wife filed a divorce petition and asked the trial court to award her property that she claimed her husband had fraudulently conveyed to his brother, who was not a party to the divorce proceedings. Id. The trial court found that the husband had, in fact, fraudulently conveyed the property to his brother and awarded the wife half of the property. Id. at 242. The appellate court reversed because the brother "was a necessary and indispensable party to the suit under the judgment which in effect divested title out of him...." Id. at 242-43.
Evangelina similarly asserted that Miguel used the co-appellants to defraud her of property that she claimed was community property. The trial court agreed with Evangelina and awarded the claimed property in its division of the community estate. As in Walsh , this award improperly divests the co-appellants of their property interests without notice and an opportunity to challenge whether their property belongs to the community estate.
Evangelina responds that the co-appellants have other remedies for asserting an interest in the property, either by seeking declaratory relief or a writ of garnishment, or by filing a trespass to try title suit. This argument, however, was rejected by the United States Supreme Court in Armstrong v. Manzo , 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965), in which the Court held that an invalid judgment entered without notice could not be "cured" by a subsequent hearing. 380 U.S. at 551, 85 S.Ct. 1187. The Court recognized that post-judgment remedies are constitutionally deficient cures for a lack of due process, particularly when the burden of proof shifts post-judgment. See ids="1524686" index="149" url="https://cite.case.law/us/380/545/">id. at 551-52, 85 S.Ct. 1187. Here, the burden of proof remained with Evangelina to demonstrate that these entities were alter egos of Miguel and thus properly included in the community estate. Each of Evangelina's proposed remedies improperly shift the burden of proof. Accordingly, we reject Evangelina's argument that post-judgment remedies cure the trial court's judgment against the co-appellants.
C. Sufficiency of Evidence Supporting Alter Ego *169 A party seeking to disregard corporate formalities bears the burden of proving that the company is an alter ego of another person or entity. See Torregrossa v. Szelc , 603 S.W.2d 803, 804 (Tex. 1980) ; Goldstein v. Mortenson , 113 S.W.3d 769, 781 (Tex. App.-Austin 2003, no pet.). Courts review conclusions of law regarding alter ego and single business enterprise de novo to determine their correctness as applied to the facts. See BMC Software Belg., N.V. v. Marchand , 83 S.W.3d 789, 794 (Tex. 2002). We review the evidence underlying findings of fact for legal and factual sufficiency under the same standards applied in reviewing evidence supporting a jury's findings. See Ortiz v. Jones , 917 S.W.2d 770, 772 (Tex. 1996) (per curiam); Catalina v. Blasdel , 881 S.W.2d 295, 297 (Tex. 1994). We sustain a no-evidence challenge when the record reveals either (1) a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla of evidence, or (4) the evidence establishes conclusively the opposite of a vital fact. See Serv. Corp. Int'l v. Guerra , 348 S.W.3d 221, 228 (Tex. 2011) ; City of Keller v. Wilson , 168 S.W.3d 802, 810-28 (Tex. 2005).
To establish alter ego and disregard the corporate existence in the divorce context requires showing at least (1) such unity between the corporation and the other spouse that the separateness of the corporation has ceased, and (2) adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice and damage the community estate beyond that which might be remedied by a claim for reimbursement. Marcum v. Marcum , No. 01-04-01062-CV, 2008 WL 2388073, at *2 (Tex. App.-Houston [1st Dist.] June 12, 2008, no pet.) (mem. op.); Humphrey v. Humphrey , 593 S.W.2d 824, 826 (Tex. Civ. App.-Houston [14th Dist.] 1980, writ dism'd). Mere dominance of the corporation by the spouse is not sufficient. See Lifshutz v. Lifshutz , 61 S.W.3d 511, 517 (Tex. App.-San Antonio 2001, pet. denied).
For the reasons below, we conclude that the evidence fails to establish that any entity is Miguel's alter ego. Out of the 133 entities that the trial court ruled to be Miguel's alter egos, more than 120 were non-U.S. entities for which no evidence of form or legal structure was provided. The trial court made no findings on the alter-ego elements as to each of the entities, and the record lacks sufficient evidence to support the elements. The trial court's findings that Miguel controls the alter ego entities generally, used corporate funds for personal expenses, and improperly transferred corporate funds to third parties are not specific to any entity. For instance, the trial court generally concluded that "The Grupo Zeta/Grupo Miguel Zaragoza F. Entities do not observe corporate formalities." Testimony about Miguel's alleged control of the entities similarly consisted of generalizations and conclusions regarding "the company," "the companies," or the "Zeta Group" without reference to the specific entities.
With respect to the alter-ego doctrine, Evangelina asserts that Miguel's refusal to participate in discovery bars him from challenging the sufficiency of evidence. The record does not show that Evangelina moved to compel Miguel to produce corporate records he might possess or control. Nor is there any indication that Evangelina sought discovery from any of the entities themselves. Regardless of Miguel's failure to participate, Evangelina bore the burden of presenting some evidence in support of her petition's alter-ego allegations. See Vazquez , 292 S.W.3d at 83 ;
*170 Reavis , 2003 WL 22922429, at *2. This evidentiary burden was not met.
D. Single Business Enterprise
Evangelina also argued, and the trial court found, that the 133 entities alleged to be alter egos constitute a "single business enterprise." The trial court's related finding states simply that these entities "are alter egos of [Miguel] and constitute a single business enterprise." There are no supporting findings. In any event, the Texas Supreme Court has rejected the single business enterprise theory, which seeks to hold each constituent corporation liable for debts incurred in pursuit of their common business purpose. See SSP Partners v. Gladstrong Invs. (USA) Corp. , 275 S.W.3d 444, 455-56 (Tex. 2008). Accordingly, the trial court erred in treating the entities as a single business enterprise.
V. Fraud on the Community
Miguel asserts that the evidence does not support the trial court's finding of more than $1 billion in community waste. The record thus lacks evidence to support the award of $537,680,823 in fraud-on-the-community damages to Evangelina.
The majority of the alleged $1.04 billion in community waste consists of $875 million described as "Enterprise Contract profits." Three of the trial court's findings of fact relate to the Enterprise Contract, stating that:
• "the value of [the Enterprise Contract] was roughly $300 million annually";
• the term of the Enterprise Contract "runs from 2013 to 2017"; and
• "[t]he expected profit from the subsequent resale of LPG bought under the Enterprise Contract each year is between $54 million and $97 million depending on price fluctuation, which is typically driven by cold weather requiring heating oil."
But the trial court made no findings and Evangelina offered no evidence to prove that the Enterprise Contract constitutes fraud on the community or waste of the marital estate.
Other restitution amounts alleged by Evangelina similarly lack evidentiary support. These include Evangelina's assertions that:
• $3,800,000 was improperly transferred to Dora Martinez;
• the value of jewelry, clothing, furs, and purses improperly purchased for Esther was $15,000,000;
• the value of income tax penalties paid on behalf of Esther was $4,000,000;
• the value of Guatemala monthly deposits to personal accounts was $46,000,000; and
• the value of "Damages/losses/diminution in value to community businesses by MZF acts/FRAUD" was $50,000,000.
Because Evangelina failed to adduce any evidence to support the findings of fraud on the community, they cannot stand.
VI. Injunctions
Miguel challenges each of the nineteen permanent injunctions against him in the decree.
Injunctions 1 through 5 follow section 6.501 of the Family Code and forbid Miguel from "[c]ommunicating with the Petitioner ... in vulgar, profane, obscene, or indecent language or in a coarse or offensive manner," "[t]hreatening the Petitioner or a child of either party," and "[c]ausing bodily injury to the Petitioner or to a child of either party." Without citation to authority, Miguel's challenge consists of a statement that he "never has threatened *171 Evangelina or her children or caused bodily injury to them, and there is absolutely no imminent risk of him doing so." Absent authority or further argument explaining a ground for reversal of those injunctions, Miguel's challenge to them is waived. See TEX. R. APP. P. 33.1, 38.1(i).
Injunctions 6 through 18 restrict the disposition of property awarded in the divorce. Specifically, injunctions 6 through 17 restrain Miguel from interfering with property awarded to Evangelina, and injunction 18 extends the injunctions contained in the court's temporary orders by forbidding Miguel from "attempting to circumvent, modify and/or violate the orders previously issued by this Court concerning Petitioner's rights to property and support." The temporary orders provide that they would continue "until the signing of the Final Decree of Divorce or until further notice of this Court," and thus, by their own terms, have been superseded by the divorce decree's disposition of the community estate. Injunction 19 further restrains Miguel from "[a]cting directly or indirectly in a manner that may affect or impair the business functions" in association with any third parties, including 28 named individuals. Because we remand for a new property division, we vacate injunctions 6 through 19.
In arguing that the trial court erred in granting injunctive relief, the co-appellants' arguments focus on the propriety of injunctive relief concerning the operation of entities held to be alter egos. Because we hold that the trial court erred in holding the entities to be alter egos and remand for a new property division, we reverse the injunctive relief regarding the operation of these entities.
VII. Spousal Maintenance
Miguel asserts that the evidence is legally and factually insufficient to support the trial court's award of $5,000 per month in spousal maintenance. We review a spousal maintenance award for an abuse of discretion. Dunn v. Dunn , 177 S.W.3d 393, 396 (Tex. App.-Houston [1st Dist.] 2005, pet. denied).
A court may award spousal maintenance "only if the spouse seeking maintenance will lack sufficient property, including the spouse's separate property, on dissolution of the marriage to provide for the spouse's minimum reasonable needs." TEX. FAM. CODE § 8.051. In reviewing a spousal maintenance award on appeal, we employ a two-pronged inquiry to determine whether the trial court (1) had sufficient information on which to exercise its discretion and (2) erred in its application of that discretion. Day v. Day , 452 S.W.3d 430, 433 (Tex. App.-Houston [1st Dist.] 2014, pet. denied).
The trial court did not make any specific findings of fact or conclusions of law addressing spousal maintenance. The evidence offered by Evangelina does not relate to her minimum reasonable needs, but instead focuses on her standard of living before she filed for divorce. Nothing in the record demonstrates that the maintenance award was necessary to provide for Evangelina's minimum reasonable needs. See Everitt v. Everitt , No. 01-11-00031-CV, 2012 WL 3776343, at *8 (Tex. App.-Houston [1st Dist.] Aug. 31, 2012, no pet.) (mem. op.) ("When considering whether the spouse seeking spousal maintenance will have sufficient property after the divorce to provide for her minimum reasonable needs, the trial court may consider the liquidity of the assets awarded to her and their ability to produce income."). We therefore reverse the award of spousal maintenance for the trial court to determine the issue on remand in light of the new property division.
*172 VIII. Attorney's Fees
The decree ordered Miguel to pay the attorney's fees, costs, and expenses that Evangelina incurred in the divorce proceedings. The court awarded $1,445,437.00 to Greenberg Traurig and $315,707.62 to the Law Office of Jeanne Caldwell McDowell, with "interest at six percent per year, compounded annually." Miguel argues that the trial court erred in awarding these fees because no evidence was offered as to their reasonableness.
Section 6.708(c) of the Family Code authorizes the court to award "reasonable attorney's fees and expenses" in a suit for dissolution of a marriage. TEX. FAM. CODE § 6.708(c). The reasonableness of the fee is a fact question and must be supported by the evidence. West v. West , No. 01-14-00350-CV, 2016 WL 1719328, at *7 (Tex. App.-Houston [1st Dist.] Apr. 28, 2016, no pet.) (mem. op.). To support an award of attorney's fees, evidence should be presented on the "hours spent on the case, the nature of preparation, complexity of the case, experience of the attorney, and the prevailing hourly rates" in the community. See Hardin v. Hardin , 161 S.W.3d 14, 24 (Tex. App.-Houston [14th Dist.] 2004, no pet.) ; see also Goudeau v. Marquez , 830 S.W.2d 681, 683-84 (Tex. App.-Houston [1st Dist.] 1992, no writ).
Neither the decree nor the findings of fact and conclusions of law contain any analysis of the reasonableness of the fees awarded. No evidence shows the hours the attorneys worked, the nature of preparation, their experience, or the prevailing hourly rates in the community. Because insufficient evidence supports the reasonableness of the amount of attorney's fees awarded, we reverse the award and remand for a new trial.
IX. Post-Judgment Interest
Finally, Miguel asserts that the trial court erred by awarding compound interest at a rate of six percent per year on the attorney's fees award and the $537,680,823 judgment for fraud on the community, because Texas law caps interest at five percent.
Section 304.003(c) of the Texas Finance Code provides that the post-judgment interest rate is:
(1) the prime rate as published by the Board of Governors of the Federal Reserve System on the date of computation;
(2) five percent a year if the prime rate as published by the Board of Governors of the Federal Reserve System described by Subdivision (1) is less than five percent; or
(3) 15 percent a year if the prime rate as published by the Board of Governors of the Federal Reserve System described by Subdivision (1) is more than 15 percent.
TEX. FIN. CODE § 304.003(c) ; see also TEX. FIN. CODE § 304.004 (post-judgment interest rate to be published in Texas Register); 40 TEX. REG. 8415, 8669 (2015) ("The judgment ceiling as prescribed by § 304.003 for the period of 12/01/15-12/31/15 is 5.00% for Commercial over $250,000."). Accordingly, the trial court erred in awarding interest at a rate of six percent. We reverse the interest awards in lieu of modifying the judgment because we reverse the underlying monetary awards.
X. Myrna's Motion for Sanctions
Myrna Alicia Zaragoza Lopez, daughter of Miguel and Evangelina, challenges the trial court's denial of her motion to sanction Evangelina's counsel. We review this challenge for an abuse of discretion. Cire v. Cummings , 134 S.W.3d 835, 838 (Tex. 2004) ;
*173 WWW.Urban.Inc. v. Drummond , 508 S.W.3d 657, 675 (Tex. App.-Houston [1st Dist.] 2016, no pet.). When reviewing sanctions orders, appellate courts are not bound by the trial court's findings of fact and conclusions of law. See Am. Flood Research, Inc. v. Jones , 192 S.W.3d 581, 583 (Tex. 2006) (per curiam). Rather, we independently review the entire record to determine whether the trial court abused its discretion. Id. A trial court abuses its discretion if it acts without reference to any guiding rules and principles to the extent the act was arbitrary or unreasonable. See ids="8421372" index="174" url="https://cite.case.law/sw3d/192/581/#p583">id. ; Cire , 134 S.W.3d at 838-39.
In her motion, Myrna contended that Evangelina's counsel filed a claim for intentional infliction of emotional distress against her that had no support in the facts or the law. Counsel nonsuited the claim after Evangelina's deposition. Evangelina responds that the trial court acted within its discretion in denying the sanctions request because the claim was directed at Miguel, not Myrna, and Evangelina promptly amended her pleading to omit the claim after her deposition.
A. Background
Myrna was added as a party in Evangelina's First Amended Original Petition. The challenged part of the petition alleged that:
Respondent [Miguel] intentionally or recklessly engaged in a pattern of extreme and outrageous conduct that caused Petitioner to suffer severe emotional distress. Respondent and Co-Respondent Elsa Esther Carrillo Anchondo, along with Co-Respondents Raoul Gisler, Ernesto Carrillo, Evangelina Zaragoza Lopez, and Myrna Alicia Zaragoza Lopez, all of whom resided in El Paso, Texas, flaunted their presence in a manner that was publicly embarrassing and intimidating to Petitioner.
Myrna filed an answer and a counterclaim seeking sanctions under Chapter 10 of the Texas Civil Practice and Remedies Code and Rule 13 of the Texas Rules of Civil Procedure. See TEX. CIV. PRAC. & REM. CODE §§ 10.002, 10.004 ; TEX. R. CIV. P. 13. Asserting that Evangelina and Miguel divorced in Mexico in 1959, Myrna's counterclaim sought sanctions on the basis that the trial court lacked jurisdiction because the parties were not married.
Myrna's counsel questioned Evangelina about her petition's allegations during her deposition. Evangelina stated that she was unaware that she had sued Myrna. Evangelina further stated that she did not wish to sue Myrna and agreed that, "to the extent that [her] petition contains allegations against Myrna, [she] do[es] not inten[d] to pursue them." Evangelina nonsuited Myrna on the deposition record.
Based on that deposition testimony and nonsuit, Myrna moved for sanctions against Evangelina's counsel under Civil Practice and Remedies Code sections 10.002 and 10.004, Rule 13, and the trial court's inherent power. Myrna argued that the claim against her had no evidentiary support and that "[Evangelina's] counsel could have asserted it only for harassment of Myrna, or in bad faith, or as some means of gaining leverage over [Miguel]."
The sanctions motion remained pending through trial. When asked about matters pertaining to the motion for sanctions at trial, Evangelina testified on direct examination that she did not want to sue Myrna, but she authorized her attorneys to sue her, and then authorized her attorneys to non-suit her. On cross-examination, Myra's counsel asked Evangelina "do you understand that at the time that I questioned you at your deposition, that you had not yet dismissed your claims against Myrna?" Evangelina's counsel objected on the basis that the question called for attorney-client-privileged *174 information. The trial court ruled that it would continue to allow cross-examination on the issue after trial.
The court held a post-trial hearing regarding the motion for sanctions on November 20, 2015. Evangelina testified that she had no knowledge whether the events described in her petition about Myrna were true, she did not believe Myrna intended to cause her emotional harm, she did not wish to sue Myrna, and she did not believe Myrna had been sued. When asked whether she authorized her counsel to sue Myrna, Evangelina's counsel objected based on attorney-client privilege, and the court sustained the objection. At the conclusion of the hearing, the trial court denied the motion for sanctions.
B. Applicable Law
Section 10.001 of the Texas Civil Practice and Remedies Code provides, in relevant part, that the signing of pleadings and motions constitutes a certificate by the signatory that each allegation or other factual contention in the pleading or motion "has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." TEX. CIV. PRAC. & REM. CODE § 10.001(3). Sections 10.002 and 10.004 authorize the trial court to impose sanctions for a violation of section 10.001, including an order that counsel who signed pleadings in violation of section 10.001 must pay the other party's reasonable expenses, "including reasonable attorney's fees." Id. §§ 10.002(a), (c), 10.004(c)(3).
Texas Rule of Civil Procedure 13 provides sanctions for a party filing a pleading that is groundless and brought in bad faith or groundless and brought to harass. TEX. R. CIV. P. 13. Rule 13 explains that "groundless" means that the claim has "no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." Id. Bad faith is the conscious doing of a wrong for dishonest, discriminatory, or malicious purposes; bad faith does not exist when a party merely exercises bad judgment or is negligent. Thielemann v. Kethan , 371 S.W.3d 286, 294 (Tex. App.-Houston [1st Dist.] 2012, pet. denied).
Trial courts also have the inherent power to sanction a party for abuse of the judicial process, which may not be covered by rule or statute. See In re Bennett , 960 S.W.2d 35, 40 (Tex. 1997) (orig. proceeding) (per curiam); Lawrence v. Kohl , 853 S.W.2d 697, 700 (Tex. App.-Houston [1st Dist.] 1993, no writ) ; Kutch v. Del Mar Coll. , 831 S.W.2d 506, 509-10 (Tex. App.-Corpus Christi 1992, no writ).
C. Denial of Sanctions
Myrna contends that the trial court was required to grant her motion for sanctions against Evangelina's counsel. Although the action was nonsuited, Myrna argues that she should have been nonsuited earlier.
Generally, we presume that pleadings and other papers, such as motions, are filed in good faith. Nath v. Tex. Children's Hosp. , 446 S.W.3d 355, 361 (Tex. 2014) (citing GTE Commc'ns Sys. Corp. v. Tanner , 856 S.W.2d 725, 730 (Tex. 1993) ). The party seeking sanctions bears the burden of overcoming the good-faith presumption. Id. Sanctions are reserved for "those egregious situations where the worst of the bar uses our honored system for ill motive without regard to reason and the guiding principles of the law." Thielemann , 371 S.W.3d at 295 (quoting Dyson Descendant Corp. v. Sonat Expl. Co. , 861 S.W.2d 942, 951 (Tex. App.-Houston [1st Dist.] 1993, no writ) ). A trial court may not base sanctions solely on the legal merit *175 of a pleading or motion. Thielemann , 371 S.W.3d at 294 (citing Elkins v. Stotts-Brown , 103 S.W.3d 664, 668 (Tex. App.-Dallas 2003, no pet.) ). It must also examine the facts available to the litigant and the circumstances existing when the pleading was filed. Id.
At a sanctions hearing, the trial court is entitled to judge the credibility of the witnesses and the weight of their testimony, because it has the opportunity to observe their demeanor. See Daniel v. Kelley Oil Corp. , 981 S.W.2d 230, 232-33 (Tex. App.-Houston [1st Dist.] 1998, pet. denied) (en banc); City of Dallas v. Cox , 793 S.W.2d 701, 724 (Tex. App.-Dallas 1990, no writ).
Based on the conflicting evidence, the trial court could have concluded that Myrna did not meet her burden of overcoming the presumption that the pleading was filed in good faith. The amended petition did not make clear whether Myrna was actually being sued for intentional infliction of emotional distress and Evangelina's testimony is equivocal. Myrna argues that (1) Evangelina's counsel could have asserted it only to harass Myrna, or in bad faith, or as a means to gain leverage against Miguel and (2) counsel's lack of any serious effort to advance a case against Myrna demonstrates an improper motive. The trial court was in the best position to evaluate the credibility of Evangelina's counsel's claim that the petition's allegations were "likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." TEX. CIV. PRAC. & REM. CODE § 10.001(3). Although Evangelina ultimately nonsuited the claim, the nonsuit, without more, does not foreclose the trial court from concluding that counsel had a reasonable belief that evidentiary support existed when the petition was filed.
A court's inherent power to sanction should be used sparingly and only to the extent necessary to deter, alleviate, and counteract bad-faith abuse of the judicial process. See Onwuteaka v. Gill , 908 S.W.2d 276, 280 (Tex. App.-Houston [1st Dist.] 1995, no writ) (citing Metzger v. Sebek , 892 S.W.2d 20, 52-53 (Tex. App.-Houston [1st Dist.] 1994, writ denied) ). The best practice is for the trial court to rely on the rules and statutes expressly authorizing sanctions whenever possible. Kings Park Apts., Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh , 101 S.W.3d 525, 541 (Tex. App.-Houston [1st Dist.] 2003, pet. denied). Although a trial court may exercise its inherent power to sanction conduct that may not be covered by any specific rule or statute, there must be some evidence and factual findings that the conduct complained of significantly interfered with one of the trial court's core functions. See Island Entm't, Inc. v. Castaneda , 882 S.W.2d 2, 5 (Tex. App.-Houston [1st Dist.] 1994, writ denied). No such evidence was presented in this case.
Myrna also argues that she was denied the opportunity to support her motion because the trial court abused its discretion in sustaining the privilege objection as to whether Evangelina had authorized her counsel to sue Myrna. She claims that by sustaining the objection, the trial court violated her due process rights because the ruling prevented her a "fair and meaningful cross examination." Evangelina, however, had already equivocated as to her desire to sue Myrna. Thus, to the extent that the trial court erred in sustaining the privilege objection, any error was harmless. See TEX. R. APP. P. 44.1(a).
Conclusion
For the foregoing reasons, we reverse the trial court's final divorce decree and remand the case for further proceedings consistent with this opinion. We affirm the *176 denial of Myrna Alicia Zaragoza Lopez's motion for sanctions.

Evangelina challenged the intervenors' standing and moved to dismiss their appeals on the basis that the interventions were untimely. We denied her motion to dismiss. See Fuentes v. Zaragoza , No. 01-16-00251-CV, 2017 WL 976079 (Tex. App.-Houston [1st Dist.] Mar. 14, 2017, order). Evangelina did not seek dismissal of Myrna Zaragoza Lopez's appeal.

Rule 308b became effective on January 1, 2018, during the pendency of this appeal. See Misc. Docket No. 17-9163 (Tex. Dec. 28, 2017).

The co-appellants also argue that the alter-ego doctrine does not apply in the context of this case. We need not determine the issue given our disposition.