**Opinion issued April 28, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00329-CV

————————————

**FARIHA ASHFAQ, Appellant**

**V.**

**MOHAMMAD ASHFAQ, Appellee**

———————————————————————————————————————

**On Appeal from the 246th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-60365**

———————————————————————————————————————

## O P I N I O N

In October 2011, Fariha Ashfaq petitioned for divorce from Mohammad Ashfaq in a Harris County district court. With his answer, Mohammad proffered a Pakistani divorce decree and sought dismissal of the divorce action for want of

jurisdiction based on the parties' earlier divorce in Pakistan. After a bench trial, the trial court ruled that the Pakistani divorce was valid, dismissed the divorce action for want of jurisdiction, and treated the remainder of Fariha's pleading as a post-divorce petition for division of assets, upon which it entered a judgment dividing the parties' assets.

Fariha appeals, contending that the trial court erred in dismissing her petition for divorce because: (1) Texas courts have sole jurisdiction over the parties' divorce; (2) the Pakistani divorce should not be recognized in the United States as a valid divorce; and (3) Mohammad failed to comply with Pakistani law in procuring the divorce. She does not contest the division of assets. Finding no error, we affirm.

## Background

Fariha and Mohammad were married in Pakistan in December 2007. After the marriage, Mohammad spent a few months with Fariha in Pakistan, then returned to his home in Fort Worth. Fariha remained in Pakistan until June 2009, when she was granted a visa to join Mohammad and traveled to the United States. Fariha and Mohammad then lived together in Fort Worth as husband and wife.

The union was not a happy one. In November 2009, Fariha and Mohammad went to Pakistan to attend a family wedding. Once they arrived, Mohammad had Fariha's parents take Fariha to their home.

2

Fariha and Mohammad disagree about what happened after the separation. Mohammad testified that eight days later, he announced to Fariha his intent to divorce her, then informed the Chairman of the Union Council that he had divorced his wife. Mohammad had a divorce decree prepared and sent to Fariha's parents' home, where her brother received it. Fariha denied that Mohammad gave her timely notice of the divorce, but admitted to having received the divorce papers on November 23, before the divorce was final. Mohammad returned to the United States in late November 2009. He went again to Pakistan in September 2010 to marry another woman, who has since been admitted entry into the United States and lives with him in Fort Worth.

Fariha returned to the United States in April 2010. She has resided in Houston ever since and did not have any contact with Mohammad before filing the divorce petition.

At trial, Mohammad adduced evidence of the Pakistani divorce laws through an expert in Pakistani family law who was licensed to practice in Pakistan. The expert witness testified about the procedural requirements for divorce in Pakistan. An English translation of "Proceeding of Union Council under Muslim Family Law Ordinance 1961(7)," in evidence before the trial court, explains that, after the husband pronounces "talaq" ("I divorce you") three times:

1. He provides a copy of the divorce deed to the wife.

2. He gives notice to the Chairman of the Union Council, along with the divorce deed, that he has divorced his wife.

3. The Chairman shall supply a notice for reconciliation to the wife.

4. The Chairman shall constitute an Arbitration Council within thirty days for the purpose of bringing about reconciliation between the parties.

5. The prescribed period is three months (90 days). The time period begins when the Chairman of the Union Council receives notice. If the Chairman does not constitute an Arbitration Council for reconciliation, or reconciliation efforts fail, or either party does not want reconciliation, the divorce shall become final after 90 days of such a notice.

6. The Chairman will issue a divorce certificate.

Mohammad's expert testified that Mohammad complied with the Pakistani divorce Ordinance and opined that his divorce from Fariha is valid.

**Discussion**

*I.      Applicable Law and Standard of Review*

Subject-matter jurisdiction is essential for a court to have authority to decide a case; it is never presumed and cannot be waived or conferred by consent. *See Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993); *see also Alfonso v. Skadden*, 251 S.W.3d 52, 55 (Tex. 2008) (per curiam) (subject-matter jurisdiction cannot be waived and can be raised at any time). States, however, are not required to give full faith and credit to foreign country judgments; dismissal based on

4

comity is a matter of discretion. *Acain v. Int'l Plant Servs., LLC*, 449 S.W.3d 655, 659 (Tex. App.—Houston [1st Dist.] 2014, pet. filed); *see Reading & Bates Constr. Co. v. Baker Energy Res. Corp.*, 976 S.W.2d 702, 714–15 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). We therefore review the trial court's ruling for an abuse of discretion. *See Acain*, 449 S.W.3d at 659.

Generally, a trial court abuses its discretion if it acts arbitrarily, unreasonably, or without regard to guiding legal principles. *Id.* (citing *Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 428–29 (Tex. 2008)). Recognition of a foreign judgment in the absence of due process constitutes an abuse of discretion. "[D]ue process requires that no other jurisdiction shall give effect, even as a matter of comity, to a judgment elsewhere acquired without due process." *Griffin v. Griffin*, 327 U.S. 220, 228, 66 S. Ct. 556, 560 (1946), *quoted in In re E.H.*, 450 S.W.3d 166, 172 (Tex. App.—Houston [14th Dist. 2014, pet. filed); *see also Litvaitis v. Litvaitis*, 295 A.2d 519, 522 (Conn. 1972) ("A decree of divorce will not be recognized by comity where it was obtained by a procedure which denies due process of law in the real sense of the term . . . or where the foreign court lacked jurisdiction.").

Because the parties tried the issue of the foreign decree's validity to the bench, we review the propriety of the trial court's evidentiary findings supporting the judgment, whether express or implied, through the standard applicable to those

proceedings. In a bench trial, the trial court determines the credibility of the witnesses and the weight to be given their testimony. *Zenner v. Lone Star Striping & Paving, L.L.C.*, 371 S.W.3d 311, 314 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). In resolving factual disputes, the trial court may believe one witness and disbelieve others, and it may resolve any inconsistencies in a witness's testimony. *Zenner*, 371 S.W.3d at 314; *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). In making credibility determinations, the factfinder "cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted." *City of Keller*, 168 S.W.3d at 820. The factfinder thus is not "free to believe testimony that is conclusively negated by undisputed facts." *Id.* In matters involving factual disputes, however, a trial court does not abuse its discretion "if it bases its decision on conflicting evidence and some evidence supports its decision." *See Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009) (citing *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998)).

## II. Validity of Pakistani Divorce

### A. Effect of Texas domicile

Fariha contends that Texas had sole jurisdiction over the divorce because she and Mohammad were domiciled in Texas at the time Mohammad initiated the

6

proceeding. Although Texas law incorporates the concept of domicile, it is not universally applied the same way throughout the world. *See Williams v. North Carolina*, 325 U.S. 226, 229, 65 S. Ct. 1092, 1095 (1945) ("Under *our* system of law, judicial power to grant a divorce—jurisdiction, strictly speaking—is founded on domicil." (emphasis added)). Because Mohammad adduced evidence of the Pakistani divorce laws, any presumption that Texas law would govern the decree's interpretation does not apply here. The question before the trial court was not whether the parties satisfied the statutory requirements to file a divorce petition in Texas, but whether to recognize the Pakistani divorce as a valid divorce that terminated the Ashfaqs' marriage before Fariha filed her petition in Texas.

Texas courts treat foreign law as a fact issue. *Nguyen v. Nguyen*, 355 S.W.3d 82, 89 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). The party relying on such foreign law must therefore strictly plead and prove the law. *Id.*; *see also* TEX. R. EVID. 203 (providing that party who intends to raise issue concerning law of foreign country must give notice by pleadings or other writing and supply to all parties copies of any written materials that party intends to use at least 30 days before trial); *see also In re Estate of Loveless*, 64 S.W.3d 564, 575 (Tex. App.—Texarkana 2001, no pet.) (recognizing trial court's right to take judicial notice of law of Honduras as evidence regarding validity of prior marriage,

7

based on selected provisions of Honduran law attached to purported wife's motion for summary judgment, as requested by purported wife).

With respect to residency, the Pakistani legal expert testified that the Ordinance applies to Pakistani residents. Residency, she explained, is satisfied as long as the parties have not relinquished their Pakistani citizenship when the divorce occurred, regardless of whether they live in another country, "whether permanently or for a fixed time." It is undisputed that Fariha is a Pakistani citizen, and Mohammad testified that he has dual U.S. and Pakistani citizenship. Fariha did not present any controverting evidence. We hold that the trial court did not err in concluding that the Pakistani Union Council had jurisdiction over the divorce proceeding between Mohammad and Fariha.

### B. Public policy

Fariha also contends that the trial court should have held that the Pakistani divorce law is invalid because it denies due process and is fundamentally unfair.

Inherent in the right to due process is "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action . . . ." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 657 (1950), *quoted in Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84, 108 S. Ct. 896, 899 (1988). Mohammad's expert witness distinguished the traditional Muslim talaq from the requirements for divorce under the Pakistani

8

Ordinance, which requires notice to the wife and the Union Council and authorizes the imposition of criminal penalties for failure to comply with those requirements. The Ordinance imposes a mandatory 90-day waiting period before the divorce is final to allow for reconciliation efforts during that period and facilitates these efforts by providing for constitution of an Arbitration Council for reconciliation upon request. The record contains conflicting evidence as to whether Mohammad timely served Fariha with notice of the divorce as required under the Ordinance, but Fariha admitted to receiving the notice before the divorce became final. We will not disturb the credibility determination supporting the trial court's implicit conclusion that the procedure prescribed by the Ordinance satisfied due process. *See Unifund CCR Partners*, 299 S.W.3d at 97.

In contending that the Pakistani divorce should be considered void for public policy reasons, Fariha relies on *Aleem v. Aleem*, 947 A.2d 489 (Md. App. 2008), in which the Maryland Court of Appeals declined to recognize as a matter of comity the validity of a divorce the husband obtained by appearing at the Pakistan Embassy and performing talaq in writing without any advance notice to his wife. *Id.* at 490. We find *Aleem* inapposite. Specifically at issue in *Aleem* was a dispute regarding the division of marital property, which is not involved in this appeal. Further, the Maryland appellate court decided that the talaq divorce was inequitable in the apparent absence of evidence of Pakistan's "Dissolution of

9

Muslim Marriages Act, 1939," which permits women to divorce under certain circumstances. *See id.* at 490 n.1 (explaining its understanding that "where that Islamic law has been adopted as the secular law of a jurisdiction, such as Pakistan, a husband has a virtual automatic right to talaq, . . . but the wife only has a right to talaq if it is in the written marriage agreement or if he otherwise delegates that right to her"). Through his legal expert, Mohammad proffered evidence of the 1939 Act, which permits women to initiate divorce based on, among other things, the husband's abandonment, polygamy, imprisonment, or mistreatment.

At least one legal commentator has characterized the Pakistani divorce laws as providing an avenue beyond traditional Islamic law that can be used to safeguard and promote "the fundamental rights guarantees of contemporary constitutions and the modern ideas of social justice that have influenced them." Karin Carmit Yefet, *The Constitution and Female-Initiated Divorce In Pakistan: Western Liberalism in Islamic Garb*, 34 HARV. J.L. & GENDER 553, 562 (2011). We also note that the U.S. State Department considers a Pakistani talaq divorce obtained pursuant to the Ordinance—as opposed to a "bare talaq"—as valid proof of marital status for immigration purposes, and it presumably recognized the validity of this particular divorce in approving the visa for Mohammad's current

wife.[1]  Accordingly, we hold that the trial court acted within its discretion in recognizing the Pakistani divorce as valid as a matter of comity.

### C.    *Compliance with Pakistani law*

Finally, Fariha contends that the Pakistani divorce is invalid because Mohammad failed to comply with the legal requirements for procuring it. Mohammad's expert witness testified to the contrary: she averred that the divorce proceeding that Mohammad initiated complied with the law, and the divorce became final November 15, 2009.

Mohammad testified that he (1) pronounced the triple talaq to Fariha, (2) sent a copy of the divorce to Fariha's family home, where it was received by her brother, and (3) sent notice to the Union Council chairman before he left Pakistan.  Within the 90-day period before the divorce was final, Fariha's parents went to Mohammad's family's house and were given Fariha's personal effects, including the "maher," a fixed dowry payment owed upon divorce, and the jewelry also given as dowry.  The expert witness testified that Fariha's acceptance of the maher payment equates to acceptance of the divorce.

For the first time on appeal, Fariha points to discrepancies in the dates and other perceived flaws in the contents of the divorce documents.  However, she did not present any expert testimony in the trial court to support the conclusion that

---

[1]    *See* U.S. DEP'T OF STATE, BUREAU OF CONSULAR AFFAIRS, Pakistan Reciprocity Schedule: Documents—Divorce Certificates.

those flaws render the divorce invalid, nor is there any other evidence to controvert the analysis and opinion from Mohammad's expert witness that the divorce is valid. Moreover, Fariha does not counter Mohammad's argument at trial that Fariha's acceptance of the maher estops her from denying the validity of the divorce. *See Leedy v. Leedy*, 399 S.W.3d 335, 339–40 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (party who accepts and retains benefits of judgment is thereafter estopped to assert its invalidity); *Richards v. Richards*, 371 S.W.3d 412, (Tex. App.—Houston [1st Dist.] 2012, no pet.) (same). We hold that the trial court did not err in concluding that the divorce complied with the applicable legal requirements.

## Conclusion

We hold that the trial court acted within its discretion in dismissing the divorce action for lack of jurisdiction. We therefore affirm the judgment of the trial court.

Jane Bland
Justice

Panel consists of Justices Keyes, Bland, and Massengale.

12