

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

No. 08-23-00274-CV

---

Juan Alvarez Gottwald, Appellant

v.

Rosa Delgado Dominguez De Cano, Mario Sergio Delgado Dominguez,
Blanca Delgado De Urquidi, and Patricia Alvarez Ozuna, Appellees

---

On Appeal from the 171st District Court
El Paso County, Texas
Trial Court No. 2013DCV4096

---

## MEMORANDUM OPINION

This appeal questions the application of res judicata when an adverse judgment entered against a corporation in Mexico bars a lawsuit brought by the corporation's sole principal in his individual capacity in Texas. The trial court concluded res judicata barred the Texas suit and granted Appellees' motion to dismiss. We affirm.

# I. BACKGROUND

## A. The land purchase

Appellant Juan Alvarez Gottwald [1] is also the sole administrator and corporate representative of Axiom, S.A. de C.V (Axiom), a Mexican corporation that does business in Mexico. [2] In 2008, Axiom entered into three contracts to purchase undeveloped property in Juarez, Chihuahua, Mexico from Appellees, members of the Delgado family (Delgados). [3] The contracts set a fixed sales price for the properties, but contained a contingency clause: if the Delgados properly secured government permits for certain utilities within a designated time, Axiom would pay an additional $2,188,759.68 for the sale.

Axiom paid the fixed sales price for the properties. The Delgados later secured the designated permits and demanded payment of the contingency funds. Alvarez insisted the permits were untimely and inadequate for commercial development and refused to pay the additional amount.

## B. Criminal charges against Axiom in Mexico

In 2011, the Delgados [4] brought criminal charges for "Fraudulent Insolvency to the Detriment of Creditors" against Axiom in a Mexican magistrate court. The Delgados alleged assets were intentionally transferred from Axiom to another related entity for purposes of fraud. The

---

[1] "Gottwald" is Appellant's mother's maiden name. Because it is his preference, we refer to him as "Alvarez" throughout.

[2] "S.A. de C.V" is an abbreviation for "Sociedad Anonima de Capital Variable" which, translated, means an anonymous society of variable capital. The term connotes an organization in which there are stockholders, comparable to a U.S. corporation.

[3] Rosa Antonia Delgado Dominguez De Cano, Mario Sergio Delgado Dominguez, Federico Delgado Dominguez, and Jesus Ignacio Delgado Dominguez.

[4] Rosa's husband, Lucio Mario Cano Barraza, initiated the criminal charges on behalf of the family members. As Federico had passed away by this time, his daughter, Monica Idaly Delgado, represented his interests.

2

Mexican criminal court issued a warrant for Alvarez's arrest. Alvarez was arrested in 2013 and placed in Juarez's Cereso Prison.

Alvarez offered to deposit the disputed funds into the court's registry to serve as his bond pending resolution of the contractual dispute. The Delgados opposed this and insisted they would withdraw the criminal charges when Alvarez (1) acknowledged the contingency conditions had been met; and (2) paid the disputed amount pursuant to the contract. The court found sufficient evidence existed to allow the case to proceed and ordered that Alvarez remain in custody until the preliminary investigation was completed—an additional 90 days.

To secure his release, Alvarez paid the disputed amount of $2,189,000 by cashier's check drawn on Axiom's account to the Delgados. In return, the Delgados dismissed the criminal charges. Alvarez was then released after spending 11 days in prison. Axiom did not appeal the criminal case.

## C. El Paso County suit

In November 2013, Axiom and Alvarez filed suit against the Delgados in El Paso County, Texas.[5] Axiom and Alvarez asserted five causes of action: (1) abuse of process; (2) conspiracy to commit abuse of process; (3) intentional infliction of emotional distress; (4) conspiracy to commit intentional infliction of emotional distress; and (5) money had and received. Both Axiom and Alvarez sought damages in the amount of $2,189,000.00, claiming the Delgados manipulated the Mexican criminal court system to extort the payment in exchange for Alvarez's prison release. Individually, Alvarez sought damages for the pain and suffering he claimed was intentionally inflicted when the Delgados had him incarcerated on false charges.

---

[5] Named as Defendants were Rosa Delgado Dominguez De Cano, Lucio Mario Cano Barraza, deceased; Mario Sergio Delgado Dominguez, Monica Idaly Delgado Nevarez, Blanca Delgado De Urquidi, Jesus Ignacio Delgado Dominguez, and Patricia Alvarez Ozuna. Lucio Mario Cano Barraza, deceased, was later dismissed from the case.

### D. Axiom's suit in Mexico

In August 2014, Axiom filed suit for "illegitimate enrichment" against certain Delgado family members[6] in the Bravos District Court, Juarez. Alvarez, individually, was not a party to the suit. To prove "illegitimate enrichment" under Mexican law, Axiom had to demonstrate: (1) it had been impoverished in a particular amount; (2) the Delgados had been enriched in precisely the same amount; (3) a relationship existed between the impoverishment and the enrichment; and (4) the Delgados' enrichment was without cause or legal justification. Axiom requested the return of the disputed amount and argued the Delgados had been "enriched without cause" because the criminal charges they filed forced Axiom to pay the disputed contingency funds in exchange for Alvarez' release from prison.

The Mexican trial court found that the Delgados had satisfied the contractual terms regarding the permits and were entitled to keep the contingency funds. It held that the element of "enrichment without cause" was therefore not met and ruled against Axiom. The Mexican appellate court affirmed the trial court's ruling and held that Axiom's payment to settle the criminal case negated one of the essential elements of illegitimate enrichment. Axiom then filed an independent Amparo action in a Mexico federal court, which was ultimately denied.[7] Under the Mexican legal system, Axiom had exhausted all appellate remedies.

---

[6] Rosa Delgado Dominguez De Cano, Mario Sergio Delgado Dominguez, Jesus Ignacio Delgado Dominguez, and the Estate of Federico Delgado Dominguez.

[7] Unique to Mexican law, an Amparo suit is an extraordinary federal legal proceeding created to provide relief for constitutional or human rights violations.

### E. Motion to dismiss

In October 2022, the Delgados moved to dismiss[8] the El Paso County case, contending Axiom's corporate claims and Alvarez's individual claims had been fully adjudicated in the Mexican civil case and were therefore barred by the doctrine of res judicata.[9] That singular issue was set for bench trial in March 2023, during which both sides presented expert testimony on Mexican law.[10]

In August 2023, the trial court granted the motion and dismissed the entire suit on res judicata grounds, noting that "[a]ny relief not expressly granted . . . [was] denied." Despite the parties' requests, the trial court failed to file findings of fact and conclusions of law.[11]

Alvarez and Axiom then timely perfected this appeal. We granted Axiom's motion to dismiss its portion of the appeal, leaving Alvarez as the sole remaining appellant in this appeal.[12] On April 1, 2025, the trial court filed its findings of fact and conclusions of law per this Court's March 14, 2025 order. At the parties' request, we granted leave to file supplemental briefing in response to the trial court's findings and conclusions.

---

[8] The Delgados moved to dismiss the El Paso County suit on two prior occasions. In January 2014, they moved for dismissal under the doctrine of *forum non conveniens*, arguing the suit should proceed, if at all, in Mexico. The trial court granted the motion in 2015. On appeal, this Court reversed and remanded. *See Alvarez Gottwald v. Dominguez de Cano*, 568 S.W.3d 241, 254 (Tex. App.—El Paso 2019, no pet.). In September 2020, the Delgados amended their prior *forum non conveniens* motion; that motion was denied in May 2022.

[9] The motion also argued for dismissal on collateral estoppel grounds. *See Fenenbock v. W. Silver Recycling, Inc.*, 601 S.W.3d 32, 40 (Tex. App.—El Paso 2020) (distinguishing between claim preclusion and collateral estoppel. Because the trial court dismissed the underlying suit on res judicata grounds alone, we limit our review to that issue.

[10] Translated copies of some of the pleadings, including the final orders of the Mexican trial court and the Mexican appellate court, were admitted into evidence at the hearing.

[11] Alvarez and Axiom timely requested the trial court's findings and conclusions. *See* Tex. R. Civ. P. 296. When those were not forthcoming, Alvarez and Axiom timely filed a notice of past due findings and conclusions. *See* Tex. R. Civ. P. 297.

[12] Axiom is not a party to this appeal.

## II.  DISCUSSION

Alvarez challenges the trial court's grant of the Delgados' motion to dismiss on grounds of res judicata. Alvarez contends the trial court erred by applying Texas preclusion law to the Mexican judgment. Alvarez also challenges the sufficiency of the evidence to support the dismissal of his suit under Texas res judicata law.[13]

### A.  Standard of review and applicable law

When, as here, the material facts are undisputed, we review the trial court's application of res judicata de novo. *Eagle Oil & Gas Co. v. Shale Expl., LLC*, 549 S.W.3d 256, 267 (Tex. App.—Houston [1st Dist.] 2018, pet. dism'd) ("When, as here, the material facts are not disputed, the applicability of res judicata presents a question of law, which we review de novo."); *In re Expunction of A.R.*, 281 S.W.3d 526 (Tex. App.—El Paso 2008) ("We consider whether *res judicata* was properly applied *de novo*.").

The doctrine of res judicata (or claim preclusion) bars lawsuits that arise out of the same subject matter as a prior suit when, with the use of diligence, that subject matter could have been litigated in the prior suit. *See Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021). The doctrine is underpinned by the necessity to "bring an end to litigation, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery." *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007). The elements of res judicata are: (1) the existence of a prior final judgment on the merits by a court of

---

[13] Alvarez characterizes this argument as an alternative argument. The Delgados contend Alvarez waived this alternative argument because it was not raised or adequately briefed in his opening brief. Because we granted the parties' request to file supplemental briefing in response to the trial court's filing of findings and conclusions, we will consider the issue. *See Rogers v. City of Fort Worth*, 89 S.W.3d 265, 284 (Tex. App.—Fort Worth 2002, no pet.) ("Ordinarily, an issue raised for the first time in a post-submission brief is not preserved for appellate review. However, because we granted the City leave to file the post-submission brief, we will consider this issue."); *See* Tex. R. App. P. 38.7 (providing that a brief may be supplemented whenever justice requires, on whatever reasonable terms the court may prescribe).

competent jurisdiction; (2) the identity of the same parties, or those in privity with them; and (3) the existence of a second action based on the same claims which were raised, or could have been raised, in the first action. *Rosetta Resources Operating, LP v. Martin*, 645 S.W.3d 212, 225 (Tex. 2022) (citing *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)). Because res judicata is an affirmative defense, the party asserting it bears the burden of proving each element. Tex. R. Civ. P. 94; *Eagle Oil & Gas Co.*, 619 S.W.3d at 706.

### B. Preclusive effect

According to Alvarez, the "trial court erred in dismissing [his] suit because application of the bar of res judicata to [him] is beyond the scope of res judicata as applied in the jurisdiction that rendered the prior judgment." In other words, Alvarez contends that because a Mexican court rendered the judgment, the trial court was obligated to apply the preclusive effect under Mexican law. Citing the agreement of the Mexican law experts during the bench trial, Alvarez argues Mexico's counterpart to Texas res judicata principles would not have precluded his individual claims and the Texas trial court erred in doing so under Texas law.

Alvarez cites Texas precedent to contend that, when determining the preclusive effect of a foreign judgment, Texas courts apply the law of the state that rendered that judgment. However, the authority Alvarez relies on concerns sister-state judgments governed by the Full Faith and Credit Clause of the United States Constitution. And here, the judgment at issue is a foreign-country judgment, not a sister-state judgment, and "[s]tates . . . are not required to give full faith and credit to foreign country judgments." *Ashfaq v. Ashfaq*, 467 S.W.3d 539, 541 (Tex. App.—Houston [1st Dist. 2015, no pet.).

The Delgados rely on Chapter 36A of the Uniform Foreign Currency Money Judgments Recognition Act (the Act), which sets the standards for a court's recognition, enforcement, and

preclusive effect of foreign-country judgments. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 36A.003, 36A.004. Under the Act, "[r]ecognition of a judgment means that the forum court accepts the determination of legal rights and obligations made by the rendering court in the foreign country." *Id*. § 36A.004 cmt. 2. Subsection 1 of § 36A.007 of the Act provides that upon recognition of a foreign-country judgment, that judgment is (1) "conclusive between the parties to the same extent as the judgment of a sister state entitled to full faith and credit in this state would be conclusive;" and (2) "enforceable in the same manner and to the same extent as a judgment rendered in this state." *Id*. § 36A.007 (emphasis added).

According to Alvarez, this "limiting principle" on recognition binds a Texas court to apply the preclusive law of the issuing nation. As such, Alvarez argues the trial court was obligated to apply Mexican preclusion law to the Mexican judgment. However, as the Act makes clear, "[t]he issue of whether a foreign-country judgment will be recognized is distinct from both the issue of whether the judgment will be enforced, and the issue of the extent to which it will be given preclusive effect." *Id*. § 36A.004 cmt. 2. The Act also provides that subsection 1 of § 36A.007 "sets out the *minimum* effect that must be given to the foreign-country judgment once recognized." *Id*. cmt. 2 (emphasis added). Accordingly, "[t]he forum court remains free to give the foreign-country judgment a *greater preclusive effect* in the forum state than the judgment would have in the foreign country where it was rendered." *Id*. (citing Restatement (Third) of the Foreign Relations Law of the United States, § 481 cmt. c (1986) (emphasis added)).

Section 481 of the Restatement (Third) of Foreign Relations Law of the United States (the Restatement) similarly provides:

> [A] final judgment of a court of a foreign state granting or denying recovery of a sum of money, establishing or confirming the status of a person, or determining interests in property, is conclusive between the parties, and is entitled to recognition in courts in the United States.

8

Restatement (Third) of the Foreign Relations Law of the United States, § 481 (Am. L. Inst. 1987). The comments to this section make clear that "no rule prevents a court in the United States from *giving greater preclusive effect to a judgment of a foreign state than would be given in the courts of that state*." *Id*. cmt. c. (emphasis added).

Relying on these provisions of the Act and the Restatement, the Delgados argue that "nothing precluded the trial court from according the Mexican judgment greater preclusive effect under the Texas doctrine of *res judicata*" and "both the comments to the Act and the restatement permitted the trial court to apply Texas preclusion law to afford the judgment greater preclusive effect here than it would have in Mexico." We agree and find that the trial court did not err in applying Texas preclusion law to the Mexican judgment. Alvarez's first issue is overruled.

## C. Res Judicata

We now turn to determine whether the trial court properly dismissed Alvarez's claims under the Texas doctrine of res judicata. Again, in order to prevail on their motion to dismiss under Texas' doctrine of res judicata, the Delgados were required to establish: (1) the existence of a prior final judgment on the merits by a court of competent jurisdiction; (2) the identity of the same parties, or those in privity with them; and (3) the existence of a second action based on the same claims which were raised, or could have been raised, in the first action. *Rosetta Resources Operating, LP*, 645 S.W.3d at 225 (citing *Amstadt*, 919 S.W.2d at 652).

The trial court made findings of fact and conclusions of law in support of its dismissal order. Findings of fact in a bench trial carry the same force and dignity as a jury's verdict and are subject to review for both legal and factual sufficiency of the evidence. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Stanley Works v. Wichita Falls Indep. Sch. Dist.*, 366 S.W.3d 816, 824 (Tex. App.—El Paso 2012, pet. denied). A reviewing court considers the trial court's conclusions

9

of law de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Challenges to the sufficiency of the evidence supporting findings of fact "must be directed at specific findings of fact, rather than at the judgment as a whole." *Arrellano v. State Farm Fire & Casualty Company*, 191 S.W.3d 852, 855 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

Aside from a single remark in Alvarez's briefing stating, "Not only is the trial court's finding that privity was stipulated incorrect, but the evidence does not support a finding of privity[,]" Alvarez challenges the judgment generally and does not specifically challenge the trial court's findings. Accordingly, "review of [the] unchallenged findings is restricted to whether the evidence is legally sufficient to support them." *Anadarko Petroleum Corp. v. TRO-X, L.P.*, 511 S.W.3d 778, 784 (Tex. App.—El Paso 2016), *aff'd*, 548 S.W.3d 458 (Tex. 2018) (citations omitted). A legal sufficiency challenge will be sustained when there is:

> (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; (d) the evidence establishes conclusively the opposite of the vital fact.

*City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). In conducting a legal sufficiency review, we view the evidence in the light favorable to the verdict, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *Id.* at 830. We are also mindful that the factfinder is the sole judge of the credibility of the witnesses and the weight to give their testimony. *Id.* at 819. So long as the evidence falls within this zone of reasonable disagreement, we may not substitute our judgment for that of the factfinder. *Id.* at 822. The ultimate test in a legal sufficiency review is whether the evidence would enable reasonable and fair-minded people to reach the verdict under review. *Id.* "'Any evidence of probative force supporting a finding requires us to uphold' the trial court's ruling." *Anadarko*, 511 S.W.3d at 785 (citing *ACS Invs., Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997)).

10

Alvarez challenges the legal sufficiency of the evidence supporting the second element of Texas' doctrine of res judicata (the identity of the same parties, or those in privity with them) and the third element (the existence of a second action based on the same claims which were raised, or could have been raised, in the first action).[14]

### (1) Privity

As to the second element, Alvarez maintains that privity was not established between him and Axiom. Generally, the Texas doctrine of res judicata may not be asserted against a person who was not a party in the prior case. *See Amstadt*, 919 S.W.2d at 652 (citing Tex. Civ. Prac. & Rem. Code Ann. § 37.006(a)). However, a second suit arising out of the same subject matter may still be barred if brought by a person in privity with a party to the original suit. *Amstadt*, 919 S.W.2d at 652 (citing *Texas Water Rights Comm'n v. Crow Iron Works*, 582 S.W.2d 768, 771–72 (Tex. 1979)). The determination of privity turns on a careful examination of the circumstances of each case. *See Wilson v. Fleming*, 669 S.W.3d 450, 458-59 (Tex. App.—Houston [14th Dist.] 2021) (mem. op.) (citing *Getty Oil*, 845 S.W.2d at 800).

A person may be in privity with a party in at least three independent ways: (1) he can control an action even when not a party to it, (2) his interests can be represented by a party to the prior action, or (3) he can be a successor-in-interest deriving his claim through a party to the prior action.[15] *See Amstadt*, 919 S.W.2d at 653 (citing *Getty Oil*, 845 S.W.2d at 800); *Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 363 (Tex. 1971). Privity requires an identity of interest in the

---

[14] As to the first element (the existence of a prior final judgment on the merits by a court of competent jurisdiction), the Delgados' expert, Robert Renteria (Renteria) testified the Mexican trial court's judgment, and the Amparo court's affirmation, represented a final judgment on the merits. The El Paso County trial court similarly found that "[t]he Amparo judgment affirmed the Appeals Court–Court of Second Instance and constitutes the end of litigation in Mexico as a final and conclusive judgment." Because the parties do not challenge this element, and because it is undisputed from the record that the first element is met, our analysis is limited to the remaining elements.

[15] The Delgados do not contend that Alvarez is a successor in interest to Axiom.

same legal right that was previously litigated. *See Texas Real Estate Comm. v. Nagle*, 767 S.W.2d 691, 694 (Tex. 1989) (citing *Benson*, 468 S.W.2d at 363).

### (a) The trial stipulation

Before we examine the independent ways in which privity may be established, we first consider the trial stipulation entered by the parties. During the bench trial, Alvarez and the Delgados entered into a stipulation on privity. Relying on that stipulation, the trial court found Alvarez to be in privity with Axiom. The court specifically found:

- "[I]n both cases, there is an uncontroverted privity between Axiom and Juan Alvarez Gottwald, which the Plaintiffs Stipulated on the Record in Open Court in this case."

- "It is clear and stipulated on the record by the Parties that Axiom and Juan Alvarez Gottwald are in uncontroverted privity."

- "Additionally, the plaintiffs are in privity as announced and stipulated to by the Plaintiffs in open court."

A stipulation is "an agreement, admission, or concession made in a judicial proceeding by the parties or their attorneys, respecting some matter incident thereto." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Martinez*, 800 S.W.2d 331, 334 (Tex. App.—El Paso 1990, no pet.). "[S]tipulations enjoy equal dignity with judicial admissions, which eliminate an adversary's necessity of proof and *establish the admitted elements as a matter of law*." *Perry v. Brooks*, 808 S.W.2d 227, 229 (Tex. App.—Houston [14th Dist. 1991, no pet.). The intent of the parties when entering into a stipulation must be determined from the language used "in the light of the surrounding circumstances, including the state of the pleadings, the allegations therein, and the attitude of the parties in respect of the issues." *Discovery Operating, Inc. v. Baskin*, 855 S.W.2d 884, 886–87 (Tex. App.—El Paso 1993, no pet.). The parties must dictate into the record the material terms of the agreement and their assent thereto. *Id*. Stipulations that are ambiguous should be disregarded. *Id*.

At the bench trial, the stipulation was entered into the record as follows:

| | |
|---|---|
| The Delgados' counsel: | Thank you, Judge. And I was apologizing earlier for the sidebar with counsel because the report well knows that one of the elements of res judicata is that the parties in the second suit are the same as those in the first suit or are in privity with them and I believe we have a stipulation that I would like to announce on the record that the plaintiff stipulates, as well as the defendants, that Mr. Alvarez is in privity with Axiom. |
| The Court: | Hold on a second. Let' close the door. It stays a little cooler in here. Okay. Your stipulation again? |
| The Delgados' counsel: | That Mr. Alvarez is in privity with Axiom with respect to the filing of the Mexican suit 'cause he was not a party individually in his individual capacity but he was as the legal representative, sole administrator, and sole director of Axiom in privity with Axiom in the first Mexican suit. |
| Alvarez's counsel: | Your Honor, we agree that there is privity. We reserve the right to argue about the scope of the privity, but yes, there is privity. |

Alvarez challenges the trial stipulation, asserting that the parties never dictated the terms into the record, the trial court's application of the stipulation exceeds his "stated intent," and the stipulation is ambiguous. As the Supreme Court has stated, "there is no general definition of privity that can be automatically applied in all res judicata cases; the circumstances of each case must be examined." *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 800 (Tex. 1992). In examining the circumstances, we find the terms of the stipulation were dictated into the record, the trial court's application of the stipulation reflects Alvarez's stated intent, and the stipulation is not ambiguous.

Before announcing it, counsel introduced the stipulation of privity as an element of res judicata and identified the representative capacities of Alvarez and Axiom in the two suits, noting that both sides agreed to the stipulation. When the trial court asked counsel to restate the

13

stipulation, counsel responded that "Alvarez is in privity with Axiom with respect to the filing of the Mexican suit" and again explained the parties' respective representative capacities. Counsel for Alvarez responded by confirming the existence of privity between Alvarez and Axiom: "[W]e agree that there is privity. We reserve the right to argue about the scope of the privity, but yes, there is privity."

The Delgados argue that "the reference . . . to the 'scope' of privity doesn't undo the stipulation or render it unambiguous." We agree. Counsel first stated that privity is an element of res judicata and described the representative capacities of Alvarez and Axiom. He then announced the stipulation, and counsel for Alvarez expressly agreed. The parties' intent to stipulate that Alvarez is in privity with Axiom with respect to the filing of the Mexican suit was clear. Counsel for Alvarez did not mention the stipulation again. During closing, he referenced arguments made by the Delgados regarding privity, but made no mention of the stipulation:

> And I think that [opposing counsel] is missing the point when he talks to you about privity and suggests that Mr. Alvarez, with unrelated--with unrelated claims-- unrelated to basically a commercial claim that--that Axiom was required to bring its tort claims along with it. Those claims--you know, if it's to the extent that Mr. Alvarez is in privity with Axiom, only as pertains to decisions about the payment and the contract but whether or not there was an unjust enrichment. Axiom has no relationship as an entity with Mr. Alvarez's personal harm that he suffered as a result of this fraud.

Counsel's arguments regarding privity did not undo the stipulation that Alvarez was in privity with Axiom in the Mexican suit, nor did they render the stipulation ambiguous. Moreover, counsel did not, at any point, move to modify or withdraw the stipulation. "[S]tipulations may be modified or withdrawn . . . at the discretion of the trial court." *Daftary v. Prestonwood Mkt. Square, Ltd*., 404 S.W.3d 807, 811 (Tex. App.—Dallas 2013, pet. denied); *see Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Martinez*, 800 S.W.2d 331, 334 (Tex. App.—El Paso 1990, no pet.) ("We agree that Appellant's statements to the trial court should be construed as an 'agreement or stipulation'

14

within the contemplation of Tex. R. Civ. P. 11 and that thereafter Appellant failed to obtain leave of the court to withdraw the stipulation."); *New v. First National Bank of Midland*, 476 S.W.2d 121, 124 (Tex. App.—El Paso 1971, writ ref'd n.r.e.) ("Stipulations may be modified or withdrawn at the discretion of the trial Court.").

As to the effect of the stipulation, the Delgados argue that "[b]y entering into the stipulation, [Alvarez] induced the Delgado Parties to forgo further evidence of privity" and Alvarez "should not be allowed to flout error-preservation rules by inducing the Delgado Parties' cessation of privity evidence through a stipulation, permitting the trial court to rely on that stipulation by never mentioning it again, and then attacking the stipulation on appeal." We agree; "[i]t is a settled rule that parties may agree on the truth of specific facts by stipulating them, thereby limiting the issues to be tried and binding themselves, the trial court and the court of appeals." *Perry*, 808 S.W.2d at 229. "Stipulations are conclusive as to the facts stipulated and to all matters necessarily included therein." *Id*. Accordingly, absent a trial court's permission to modify or withdraw the stipulation, "[w]hen stipulations comprise the record of the trial court, they will be observed and the reviewing court is bound by those stipulations." *Id*. We therefore find that the trial court did not err in relying on the parties' trial stipulation on privity. Nevertheless, given the parties' dispute over the scope of the stipulation, and because privity may otherwise be established in two independent ways that remain at issue here, we turn to examine those alternatives next. *See Amstadt*, 919 S.W.2d at 653.

### (b) Control

The first way privity may exist is when a person controls an action, even though not a party to it. *Id*. While we recognize that a party's status as a corporate officer does not, absent further evidence, create privity with the corporation, we find that sufficient further evidence demonstrates

privity through Alvarez's control. *See Tex. Capital Sec. Mgmt., Inc. v. Sandefer*, 80 S.W.3d 260, 266 (Tex. App.—Texarkana 2002, no pet.). Before the trial court was evidence of Alvarez's control of the Mexican suit:

| The Delgados' counsel: | It was you, as the sole administrator of Axiom, that filed suit against the Delgados, wasn't it? |
|---|---|
| Alvarez: | I am the sole administrator of Axiom, but--but I did it through an attorney. |
| The Delgados' counsel: | Correct. You didn't represent Axiom, but you were the representative of Axiom. |
| Alvarez: | I was the representative of Axiom, yes. |
| The Delgados' counsel: | So you were directly involved in the Mexican suit? |
| Alvarez: | Well, only that I signed the lawsuit, yes. |
| The Delgados' counsel: | Yes, sir. And Axiom filed the Mexican suit at your direction 'cause you are the sole director of Axiom, correct? |
| Alvarez: | They--they did sue at my direction, yes. |
| The Delgados' counsel: | And when we say that you're the sole director, I think the exact wording in the Mexican suit is that you sued in the capacity of sole administrator. Do you recall that? |
| Alvarez: | Yes. That's my only title in the company–sole administrator. |
| The Delgados' counsel: | Does that mean that you're the sole owner of Axiom? |
| Alvarez: | No. I'm the administrator--the sole administrator. |
| The Delgados' counsel: | But you direct all the corporate activities of Axiom? |
| Alvarez: | Yes. Well, yeah. Yes, I do. |
| The Delgados' counsel: | And in this lawsuit, you're being referred to as a sole director . . . As the sole director, that means there's no other board of directors? |

16

Alvarez:                    There's no board of directors.

Alvarez relies on a provision of the Restatement (Second) of Judgments to argue that no control exists because he appeared in different capacities in the two lawsuits. Section 36 of the Restatement, titled "Parties Appearing in Different Capacities," provides:

> A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity.

Restatement (Second) of Judgments § 36 (2) (Am. Law Inst. 1982). Alvarez contends he falls within the protection of this provision. While the capacity in which parties appear is relevant in a privity analysis, a "person's appearance in a different capacity does not dictate whether a prior judgment bars the subsequent suit." *Lesikar v. Moon*, No. 01-12-00406-CV, 2014 WL 4374117, at *7 (Tex. App.—Houston [1st Dist.] Sept. 4, 2014, pet. denied) (mem. op). "Comment c to § 36 explains that the analysis focuses on the shared interests, not nominal capacity." *Id*. Comment c provides:

> A person who appears in a representative capacity in behalf of interests that include his own individually is bound by the judgment in his individual capacity not because he is the same person who was previously a party but by virtue of his representative status in the first action.

§ 36(2), cmt. c. In the circumstances of this case, and as will be described below, Axiom (or Alvarez in his representative capacity), appeared on behalf of interests that included Alvarez's individual interests. The dissent emphasizes that the powers of a corporate representative, like those of Alvarez in his representative capacity, "create[] a clear legal separation between the individual's two different capacities." We acknowledge this legal separation and point to evidence showing that Alvarez did not solely act in, or for the benefit of, his representative capacity. Alvarez's imprisonment served as the catalyst for the filing of the Mexican suit, which again, by

17

his own testimony, was initiated at his direction (Alvarez: "[T]hey did sue at my direction, yes."). To secure his release from prison, Alvarez—acting through the powers of his representative capacity—paid $2,189,000 from Axiom's account to secure his personal release. Realizing he would not otherwise be released, Alvarez decided, and was able, to pay the large, disputed amount by cashier's check drawn on Axiom's account. This conduct demonstrates Alvarez's control and unfettered access to substantial corporate funds as sole director and without accountability to a board, and for the sole benefit of his individual release. The record establishes that Alvarez is the sole director, answers to no board, exercised control sufficient to pay over $2 million from Axiom's account for his personal release and to advance his individual interests, and initiated the Mexican lawsuit.

Additionally, in *McGowen*, the Texarkana Court of Appeals distinguished between a party's capacity as guardian of an estate and his individual capacity. *McGowen v. Huang*, 120 S.W.3d 452, 463 (Tex. App.—Texarkana 2003, pet. denied). The court explained that "[a] guardian's powers, however, are not plenary, but are restricted by duties owed to the ward and the necessity to obtain court approval for most actions[,"] and held, "[t]herefore, the guardian's right to control a lawsuit does not necessarily follow from the mere fact that the individual serving as guardian is a party to the lawsuit in his or her individual capacity as well." *Id*. Here, unlike the guardian in *McGowen*, Alvarez testified he is the sole administrator of Axiom and thereby, does not answer to a board of directors. He also confirmed that he directs all corporate activities of Axiom. Moreover, Alvarez confirmed that the Mexican suit was filed at his direction. As part of its findings, the trial court found that Alvarez is the sole director of Axiom. As such, Alvarez, without answering to any fellow directors, exercised more than mere participation in the Mexican suit and had more than mere knowledge of the Mexican suit—it was initiated *at his direction*. "In

18

determining whether privity exists through control over a prior action, Texas courts have focused on whether an individual actively and openly participated in the prior proceedings to such an extent that it was clear that the individual had the right to direct them." *Maxson v. Travis Cnty. Rent Account*, 21 S.W.3d 311, 316 (Tex. App.—Austin 1999, pet. dism'd); *Dairyland Cnty. Mut. Ins. Co. v. Est. of Basnight*, 557 S.W.2d 597, 602 (Tex. App.—Waco 1977, writ refused n.r.e.) ("An exception, however, exists in those situations wherein it is held that persons though not parties to the lawsuit may, by active or open participation in the trial of the cause, so connect themselves with that litigation that the resulting judgment is res judicata for or against them."). We therefore find, in the circumstances of this case, there was sufficient evidence to support a determination of privity through Alvarez's control of the Mexican suit for Axiom.

### (c) Interests

We find that privity is further supported because Axiom represented Alvarez's interests in the Mexican suit. Again, a second way parties can be in privity is if "their interests can be represented by a party to the action." *Amstadt*, 919 S.W.2d at 653 And as the Texas Supreme Court has explained, "To determine whether subsequent plaintiffs are in privity with prior plaintiffs, we examine the interests the parties shared. Privity exists if the parties share an identity of interests in the basic legal right that is the subject of litigation." *Id.* (citing *Texas Real Estate Comm'n v. Nagle*, 767 S.W.2d 691, 694 (Tex. 1989)). "To determine whether a prior and later lawsuit involve the same basic subject matter, we focus on the factual basis of the complaint." *Id*. The focus is whether Alvarez's individual interests were, or could have been, represented by Axiom in the Mexican lawsuit. Texas courts interpret "interests" in this context as including the representation of the legal rights that are the subject of the litigations. *See, e.g.*, *Benson v. Wanda Petroleum Co*., 468 S.W.2d 361, 364 (Tex. 1971) (rejecting privity on represented-interests theory because petitioner "was not

19

shown to have any beneficial interest in the recovery of damages for personal injuries on behalf of the Porters.") (emphasis added); *Fincher v. Wright*, 141 S.W.3d 255, 261–62 (Tex. App.—Fort Worth 2004, no pet.) (treating represented interests as including each party's legal right to recovery, including attorneys' fees).

Here, Axiom represented Alvarez's individual interests in the Mexican lawsuit, as evidenced by the legal rights at issue in the litigations. The trial court found both lawsuits arose "from the same 'nucleus of operative facts' and the same transactions, i.e., the sales contracts, the permits, the bonus payment deadlines, the non-payment of bonuses, the criminal complaint and the $2.1 million payment." Axiom sought the return of $2,189,000.00 in the Mexican lawsuit, and Alvarez, in his individual capacity, and Axiom, sought the very same amount in the trial court. Axiom and Alvarez's last live pleading provides: "The Delgados have extorted Alvarez and Axiom in the amount of $2,189,000.00, U.S. Dollars. Plaintiffs request that the Court award them damages in this amount[.]" Given these circumstances, we find privity is supported by sufficient evidence that Axiom represented Alvarez's individual interests in the Mexican litigation.

On this record, we conclude that privity existed between Alvarez and Axiom, as established by the parties' trial stipulation, by sufficient evidence of Alvarez's control of the Mexican suit, and by sufficient evidence that Axiom represented Alvarez's individual interests in that suit. We now turn to the third element of res judicata.

### D. Claims

As previously stated, res judicata precludes relitigating claims in a second action based on claims that were raised, or could have been raised, in the first action. *Amstadt*, 919 S.W.2d at 652. Texas applies the transactional approach to res judicata. Under the transactional approach, whether claims arise from the same transaction is determined pragmatically, "giving weight to such

considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage." *Barr v. Resol. Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 631 (Tex. 1992). Courts focus on the factual basis of the complaints, and "[i]f the second plaintiffs seek to relitigate the matter which was the subject of the earlier litigation, res judicata bars the suit even if the second plaintiffs do not allege causes of action identical to those asserted by the first." *Amstadt*, 919 S.W.2d at 653.

Alvarez and Axiom's last live pleading in the trial court set out the following factual allegations for each claim:

- <u>Abuse of process and conspiracy to commit abuse of process</u>

The Delgados, through their criminal complaint against Alvarez, caused an arrest warrant to be issued for his arrest. After, the Delgados made perverted use of the process by employing it as a device to imprison Alvarez to extort the sum of $2,189,000.00 from him and Axiom. The process was used with an ulterior motive to extort payment for a meritless claim. As a result, Alvarez was imprisoned for 11 days, and Alvarez and Axiom were extorted for $2,189,000.00.

- <u>Intentional infliction of emotional distress and conspiracy to commit intentional infliction of emotional distress</u>

In presenting the fraudulent criminal complaint against Alvarez, the Delgados acted intentionally to inflict grave emotional distress on Alvarez and the Delgados' extreme and outrageous conduct caused Alvarez severe emotional distress.

- <u>Money had and received</u>

The Delgados hold money that belongs to Alvarez and Axiom. Alvarez and Axiom request that it be returned to them.

21

At the bench trial, Renteria testified about the claims asserted in Texas and their availability under Mexican law:

Counsel: Okay. And then so what--what would be the cause of action in a civil lawsuit that you think could have been brought that is equivalent to abuse of process?

Renteria: Okay. Let's say--and I'm gonna mention an example here--if you believe or you have the evidence or you know that in one specific procedure, your counterparty presented false witnesses or false evidence or whatever . . . and that lead [sic] to a final decision that caused you damages or caused you to unjust order to do anything, you can file a civil lawsuit. But you have to prove that those witnesses were presented--that were presented before that procedure declared falsely and that the documents were–you don't have to file the lawsuit against the whole procedure. You just have to--to take the parts that you believe were wrong and if those--those depositions or those documents were an essential part of the decision that affected you, then you can file a civil lawsuit also. That--that--that wouldn't be exactly moral damages but would be material damages.

.        .        .

Counsel: Right. But it would not be for abuse of process. It would not be for misusing legal process for improper purpose. It would be for lying under oath.

Renteria: Yeah. I mean, we can name it as we want.

As to the claim of intentional infliction of emotional distress, Renteria testified as follows:

Counsel: In Mexico, could Mr. Alvarez, at the time that the original petition was filed in Mexico, could he have individually or did he have a cause of action to file that's equivalent to intentional infliction of emotional distress?

Renteria: Yes. That's what we call in Mexico moral damages.

Counsel: Okay. Explain what moral damages are.

Renteria: Every--when someone is affected on his feeling, his reputation, or what other thing about the person because of some illegal--or alleged illegal conduct that another person made.

22

| Counsel: | Is that a cause of action that one can file in Mexico for mental anguish? |
|---|---|
| Renteria: | Yes. |
| Counsel: | Moral damage? |
| Renteria: | Yeah. Anguish is also part of the--of the–could be part of a moral damage law, yes. |
| Counsel: | As an expert in Mexican law, can you think of any impediment that Mr. Alvarez had to filing his own personal cause of action in Mexico for intentional infliction of emotional distress? |
| Renteria: | No. |

.    .    .

| Counsel: | And Axiom could have brought a claim, as I understood your testimony, for moral damages but it's limited to, like, a defamation-type of a case? |
|---|---|
| Renteria: | Yes. |

Regarding the claim of money had and received, Renteria testified as follows:

| Counsel: | Okay. Let's talk about what--what causes of action exist in Mexico back at the time of this lawsuit. Does there exist in Chihuahua civil law an action for money had and received? |
|---|---|
| Renteria: | Well, can you explain to me what is money had and received? |
| Counsel: | Yes. I'm going to submit to you to assume the following: That the action of money had and received is when someone wrongfully holds money that belongs to somebody else. |
| Renteria: | Yes. |
| Counsel: | Does that type of action exist in Mexico? |
| Renteria: | Yeah. |

Renteria then described the way litigants may plead claims in Mexico:

23

Renteria:       Actually, in Mexico, you can file any action even without knowing or without expressing its name as long as you specify what's your claim and the basis of your claim.

Counsel:        What you just said, is that based on Chihuahua statutory law?

Renteria:       Yeah. That's actually article second of the civil procedure code.

Counsel:        And let me make sure I understand what you just said, and correct me if I'm wrong. As long as the plaintiff sets out the facts in support of his claim, it doesn't matter what you call the cause of action?

Renteria:       Yes. You just have to say specifically, and I'm going to be very practical here, you just have to state very clearly what do you want and why do you want.

Based on the foregoing, the trial court found that Alvarez could have brought his individual claims in the Mexican suit. In making this determination, the trial court applied the transactional approach to res judicata. The trial court specifically found:

- "The Amparo Court determined that the Plaintiff could have brought all claims in the Mexican criminal court by litigating his case and/ or filing an amparo where the court had subject matter jurisdiction but he chose not to do so and so this matter is now closed."

- "It is clear in the Amparo Case and this case before the Court, all claims resulting from this relationship arose from the same parties, same facts, same circumstances and same transaction."

- "[T]he claims in this Court, Abuse of Process, Conspiracy to abuse process, Intentional Infliction of Emotion Distress, Conspiracy to commit Intentional Infliction of Emotional Distress, Money Had and Received, and damages requested could have been raised in the Mexican Courts where it involved the same parties, same facts, and same circumstances and same transaction."

- "Res judicata bars the litigation of claims actually litigated as well as those arising from the same transaction that could have been litigated. The Plaintiff failed to litigate all his claims in the Mexican Courts."

- "This Court agrees with all aspects of the Amparo Court Judgment in that all the Plaintiffs claims, those litigated or should have been litigated in the Mexican Court are now barred by Res judicata."

24

In his opening brief, Alvarez asserts that "Renteria testified repeatedly that Alvarez could have brought his claims as part of this same lawsuit." Alvarez attempts to bolster his position by maintaining that both Mexican experts testified that he was not required, under Mexican res judicata law, to bring his claims in the Mexican suit. The inquiry, however, is not whether he was required to bring his claims, but whether he could have done so. *Amstadt*, 919 S.W.2d at 652. Additionally, the determination of whether claims could have been brought in a prior action does not require the claims to be identical; the inquiry is whether the claims could have been raised, regardless of the particular legal theories asserted. *See Motient Corp. v. Dondero*, 269 S.W.3d 78, 83 (Tex. App.—Dallas 2008, no pet.) (citing *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 564 (5th Cir.1983) ("When two successive suits seek recovery for the same injury, 'a judgment on the merits operates as a bar to the later suit, even though a different legal theory of recovery is advanced in the second suit.'"). "[T]he critical issue is not the relief requested or the theory asserted but whether the plaintiff bases the two actions on the same nucleus of operative facts." *Petrello v. Prucka*, 415 S.W.3d 420, 427 (Tex. App.—Houston [1st Dist. 2013, no pet.) (citations omitted). And here, the trial court properly found that both lawsuits arose from the same nucleus of operative facts under the transactional approach, explaining that each involved the same real-estate dispute, the fraudulent criminal charges against Alvarez, his arrest and imprisonment, and the $2,189,000 settlement payment made to secure his release. Again, the transactional test concerns whether the claims would form a convenient trial unit to invoke the doctrine of res judicata. *See Barr*, 837 S.W.2d at 631. Accordingly, we find sufficient evidence supports that Alvarez could have brought his individual claims in the Mexican suit.

Viewing the evidence in the light most favorable to the trial court's ruling and having found sufficient evidence of the challenged elements, we conclude the trial court did not err in dismissing Alvarez's suit under Texas res judicata law. Alvarez's alternative argument is overruled.

## III. CONCLUSION

For these reasons, we affirm.


MARIA SALAS MENDOZA, Chief Justice

September 30, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.
Soto, J., dissenting